### UNITED STATES v. PATRICK et al.

#### (Circuit Court, M. D. Tennessee. February 1, 1893.)

#### No. 7,894.

1. CIVIL RIGHTS—CONSPIRACY AGAINST CITIZENS—REVENUE OFFICERS.

Revenue officers engaged in a search for distilled spirits concealed to evade payment of the revenue tax, for the purpose of making seizure thereof, are exercising a right secured to them by the laws of the United States, and an indictment alleging the killing by defendants of such officers while exercising such right, and while defendants were engaged in a conspiracy to injure or oppress such officers, sufficiently charges the offense

prescribed by Rev. St. § 5509, providing for the punishment of a felony committed in the act of violating section 5508, which denounces conspiracy to injure or oppress any citizen exercising any right secured to him by the constitution or laws of the United States.

**2. SAME- RIGHTS OF CITIZENS TO HOLD OFFICE AND EXERCISE ITS FUNCTIONS.**

An office is a public employment, and in the performance of its functions the citizen selected to represent the sovereign is in the exercise of both a private right or privilege and public duty, and a conspiracy to hinder, oppress, and injure him in the discharge of such functions cannot be regarded as directed solely against the official in his representative character, but must be considered as also against the citizen exercising or enjoying the right or privilege of accepting public employment and engaging in the administration of its functions.

At Law. Indictment of Andrew J. Patrick, James Epps, and Morgan Petty for conspiracy and murder, under Rev. St. §§ 5508, 5509. Defendants demur to the indictment. Overruled.

Demurrers to indictments based on the same acts were heretofore sustained. See 53 Fed. Rep. 356.

John Ruhm, U. S. Atty.

Jas. H. Holman and Lamb & Tillman, for defendants.

JACKSON, Circuit Judge. The defendants are indicted under the first clause of section 5508 and also 5509 of the Revised Statutes of the United States, which provide that, "if two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the constitution or laws of the United States, or because of his having so exercised the same," they shall be subject to fine and imprisonment, and be ineligible thereafter to any office or place of honor, profit, or trust created by the constitution or laws of the United States; and, further, that (section 5509) "if, in the act of violating any provision in the * * * preceding section, any other felony or misdemeanor is committed, the offender shall be punished for the same with such punishment as is attached to such felony or misdemeanor by the laws of the state in which the offense is committed."

The indictment contains three counts, each of which substantially charges that the defendants, on October 17, 1892, in the county of Lincoln and district of middle Tennessee, within the jurisdiction of this court, committed the crime of murder while in the execution of an unlawful and felonious conspiracy with one another and with other unknown persons, to injure, oppress, threaten, and intimidate certain designated citizens of the United States in the free exercise and enjoyment of a right and privilege secured to them by the constitution and laws of the United States. In each count of the indictment the citizens of the United States against whom the conspiracy to injure, oppress, threaten, and intimidate in the free exercise and enjoyment of a right and privilege secured to them by the constitution or laws of the United States is alleged to have been made and directed were J. L. Spurrier, S. D. Mather, and S. Creed Cardwell, deputy collectors of internal revenue, and E. S. Robertson and J. E. Pulver, deputy marshals of the United

States in and for the middle district of Tennessee, and David L. Harris, summoned and acting as a "posse;" and the particular right and privilege alleged to have been secured to them by the constitution or laws of the United States, and in the free exercise and enjoyment of which the conspiracy was formed and prosecuted to injure, oppress, threaten, and intimidate them, was the duty, right, and privilege on the part of the said Spurrier, Mather, and Cardwell, as deputy collectors of internal revenue, to make searches for and seizures of distilled spirits upon which the tax imposed by the laws of the United States had not been paid, and, on the part of the said Robertson and Pulver, as deputy marshals, and of said Harris, summoned as a posse, to aid and assist in the search for and seizure of such distilled spirits and in the arrest of persons who might be discovered in possession of such distilled spirits. It is then charged that on the day and in the county and district aforesaid said parties, all being citizens of the United States, were, in the execution of this said duty, and in the exercise of their said right and privilege, searching for a quantity of distilled spirits upon which the tax due the United States had not been paid, and which had been unlawfully concealed by a person or persons to the grand jurors unknown, and were endeavoring to seize the said distilled spirits so unlawfully concealed, when and where the defendants and other persons to the grand jurors unknown, in the prosecution of their said conspiracy, did unlawfully and feloniously discharge deadly weapons, to wit, guns, rifles, and pistols, at said collectors and their aids, being then and there in the discharge of their duty, and in the exercise of their said right and privilege, with the intent to commit bodily injury upon them, and to deter and prevent them from discharging their duty and exercising their said right and privilege; that in the act of prosecuting their said conspiracy said defendants and other persons unknown concealed themselves and lay in wait at or near the place where said officers and aids were in the discharge of their duty and exercise of their said right secured to them by the constitution and laws of the United States as aforesaid, and from their place of concealment, by the discharge of said guns, rifles, and pistols, did willfully, deliberately, maliciously, premeditatedly, with malice aforethought, unlawfully and feloniously kill and murder the said J. L. Spurrier, S. D. Mather, and S. Creed Cardwell, thereby committing the felony of murder in the first degree, contrary to the statute of the United States in such cases made and provided, and against the peace and dignity of the United States.

The second and third counts of the indictment, after charging the same unlawful and felonious combination, conspiracy, and confederation on the part of defendants, by and between themselves and divers other evil-disposed persons, whose names are unknown to the grand jurors, to injure, oppress, threaten, and intimidate said Spurrier and others, who were then and there citizens of the United States, in the free exercise and enjoyment of the aforesaid right and privilege secured to them by the laws of the United States, and the willful, deliberate, malicious, premeditated, unlawful, and feloni-

ous killing of said Spurrier, Mather, and Cardwell, with malice aforethought, as aforesaid, in pursuance of said combination and conspiracy, and in the prosecution thereof, while said Spurrier and his associates and assistants were in the exercise of their right and privilege of making search for distilled spirits on which the tax imposed by the laws of the United States had not been paid, and which had been unlawfully, and contrary to the statutes in such cases made and provided, concealed,—further averred that they, the said E. S. Robertson and J. E. Pulver, as deputy marshals of the United States, were duly called upon and authorized, not only to aid and assist the said Spurrier, Mather, and Cardwell in the search for and seizure of such distilled spirits and in the arrest of persons who might be discovered in possession of or having concealed such distilled spirits, but also to protect said Spurrier, Mather, and Cardwell from the assault of the defendants and other evil-disposed persons, and that it was the right and privilege of said Spurrier, Mather, and Cardwell, citizens as aforesaid, under the constitution and laws of the United States, to be secure in their persons from bodily harm and injury while they were exercising the functions of their offices in making searches for and endeavoring to make seizures of distilled spirits as aforesaid, upon which the tax imposed by the laws of the United States had not been paid, and which had been unlawfully concealed.

The defendants have demurred to the indictment, and to each count thereof, on the ground that no offense against the United States, or within the jurisdiction of this court, is charged; that the offense committed, if any, was against the laws of the state of Tennessee, and of which the courts of that state have exclusive jurisdiction; that there is no such right and privilege secured to citizens by the constitution and laws of the United States as there set out in the several counts, and alleged to have been conspired against; that sections 5508 and 5509 of the Revised Statutes of the United States, upon which all the counts of the indictment purport to be founded, do not create the offense charged, nor authorize a prosecution in this court upon the facts alleged, but have for their object the protection of citizens in the free exercise and enjoyment of all the rights and privileges secured to them as citizens by the constitution, and not for the protection of officers of the United States engaged in the performance of duties as such; that the offense charged comes properly under the provisions of sections 5440 and 5447 of the Revised Statutes of the United States, relating to conspiracies against or to defraud the United States, and to the resistance of officers of the customs, and not under sections 5508 and 5509; that all the counts of the indictment are predicated upon the assumption that the exercise and performance of the functions, powers, and duties of an officer of the United States as an official is identical with the free exercise or enjoyment of a right or privilege secured to a citizen as such, and are therefore bad; and that the allegations and averments of the first, second, and third counts do not show any right or privilege of said persons (Spurrier and associates) as citizens, and secured to them as such by the

constitution or laws of the United States, were either interfered with, or sought to be interfered with, by defendants, but all the acts complained of therein were resistance to and injury of officers in the discharge of official duty.

It is not deemed necessary to consider and pass upon these various objections to the indictment separately. They resolve themselves into the general question whether the facts alleged and charged constitute any crime or offense against the United States under said sections 5508, 5509, Rev. St.; in other words, whether said sections have any application to citizens who, as agents or officers of the national government are discharging functions conferred, or exercising rights and privileges secured, by its laws and primarily for its benefit; or are the provisions of said sections limited and confined to the care of citizens in the exercise of such purely personal, private, or political rights and privileges as are secured to them only as citizens by the constitution and laws of the United States? The contention of the demurrants is that the right or privilege in the free exercise or enjoyment of which the conspiracy to injure, oppress, threaten, or intimidate any citizen must be directed, as provided by the statute, relates alone to such right or privilege as is secured to him in his personal and individual capacity as a citizen, and which he may exercise or abstain from exercising at his own option or pleasure, and does not extend to or include any right or privilege which a citizen as an officer or agent of the United States may be in the exercise of under their authority, and wholly or in part for their benefit. Upon the assumption that this is the true construction of section 5508, it is claimed that the several counts of the indictment only charge a conspiracy to injure, oppress, obstruct, or interfere with the designated persons in the exercise of a right or privilege secured to them by the constitution or laws of the United States, not as citizens, but as officers in the exercise of official duty, right, or privilege, and hence does not come within the purview of said section, so as to bring any act, however criminal in its character, committed in the course or prosecution of such conspiracy, within the provision of section 5509, and subject the conspirators to its penalties. It is undoubtedly true, as claimed by counsel for defendants, that, if the conspiracy charged does not come within the provisions of section 5508, no criminal act committed in pursuance of such conspiracy, or in carrying it into execution, will be covered by or punishable under section 5509. The question presented, therefore, is narrowed down to this: Does the conspiracy so charged in this indictment come within the first clause of said section 5508?

While the cases which have arisen under sections 5508, 5509, Rev. St., and which have been decided by the supreme and circuit courts of the United States do not meet and settle the precise question here presented, they have settled beyond doubt the constitutionality of said sections, and placed such construction upon section 5508 that, to bring a case within its provisions, two things or conditions must coexist, and be distinctly alleged: First, the person whom the conspiracy is intended to injure, oppress, threaten, or

intimidate, must be a citizen of the United States; and, secondly, the right or privilege in the exercise or enjoyment of which he is or has been engaged and on account of which the conspiracy is directed against him, must be one secured to him, not by the state, but by the constitution or laws of the United States. It is clearly alleged in the indictment under consideration that the persons conspired against were citizens of the United States. The particular rights and privileges averred in the indictment as being secured to them by the constitution or laws of the United States, and in the exercise of which, it is alleged, the defendants combined, conspired, and confederated to injure, oppress, threaten, intimidate, and obstruct them, are the following, viz.: As to Spurrier, Mather, and Cardwell, "the duty, right, and privilege to make search for and seizure of distilled spirits upon which the tax imposed by law had not been paid, and which were concealed," and also "the right and privilege to be secure in their persons from bodily harm, injury, assaults, and cruelties while exercising the functions of their office in making searches and seizures of such distilled spirits;" and as to Robertson, Pulver, and Harris, "the duty, right, and privilege to aid and assist in the search for and seizure of distilled spirits upon which the tax imposed by law had not been paid, and which were concealed, and in the arrest of and to arrest persons who might be discovered in possession of or having concealed such distilled spirits, etc., and the duty, right, and privilege to protect Spurrier and his associates from bodily harm and injury, assaults," etc., while exercising their functions. The allegations of the indictment as to the conspiracy to prevent said parties from exercising their designated rights and privileges, or to injure, oppress, and interfere with them in the exercise of the same, and the acts done in pursuance of such conspiracy, resulting in the killing of Spurrier, Mather, and Cardwell, are all stated with reasonable and sufficient certainty and precision to satisfy and comply with the requirements of the law and good pleading, provided the rights and privileges described are such as come within the meaning of section 5508.

In respect to citizenship, and the rights and privileges incident thereto, it should be borne in mind that we have in the political system of this country, since the adoption of the fourteenth amendment to the constitution, if such did not previously exist, both a national and state citizenship, corresponding with our dual form of government, state and federal, which owes allegiance to and is subject to the jurisdiction and entitled to the protection of each government within the sphere of their respective sovereignties. "The same person may be at the same time a citizen of the United States and a citizen of a state; but his rights of citizenship under one of these governments will be different from those he has under the other. The government of the United States, although it is, within the scope of its powers, supreme, and beyond the states, can neither grant nor secure to its citizens rights or privileges which are not expressly or by implication placed under its jurisdiction. All that cannot be so granted or secured are left to the exclusive protection of the states." U. S. v. Cruikshank, 92 U. S. 542. Speaking

generally, the constitution and laws of congress add nothing to the rights of one citizen as against another, nor do they aim to protect one citizen from personal injury or violence by another within the limits of a state. These are matters coming properly within the sovereignty and jurisdiction of the states. But in respect to rights and privileges derived from the United States, or secured by their constitution or laws, and exercised by their authority, within the scope of their powers and the sphere of their jurisdiction the general government may, under the legislation of congress, protect its citizens. Now, in the present case, it is not questioned, nor does it admit of question, that the foregoing duties, functions, rights, or privileges in the exercise of which the designated parties were conspired against were in no sense dependent upon, derived from, or secured by the constitution or laws of the state of Tennessee, but were wholly dependent upon and secured by the constitution and laws of the United States. The state had no authority or jurisdiction whatever over said duties, rights, or privileges, or the subject to which their exercise related. They had no existence prior to or apart from the constitution and laws of the United States, which created and sanctioned their exercise. Neither had the state any control, supervision, or direction over the persons representing the national government in the discharge of said duties, or in the exercise of such rights, while they acted within the line of the authority conferred upon them; but such control, supervision, and direction, as well as the primary duty and obligation of protecting them while engaged in the execution of their functions and in the exercise of the rights and privileges with which they were invested, rested upon the United States. The provisions of the statutes relating to the rights and privileges which the parties conspired against were exercising when the offenses were committed are found generally in sections 788, 3148, (Act March 1, 1879,) 3172, 3176, 3177, 3453, Rev. St. U. S., and the duty and obligation of the national government to protect its officers and agents as declared in the decisions hereafter referred to. If, therefore, the particular rights and privileges described are within the purview, true intent, and meaning of section 5508, nothing is wanting to give validity to the indictment, inasmuch as the parties exercising such rights and privileges are averred to be, or to have been, citizens of the United States. It is begging the real question, or evading it, to say that said rights or privileges were not secured by the constitution or laws of the United States to the designated persons exercising the same and conspired against as citizens, or did not belong to them as citizens in common with all other citizens of the United States. The statute applies to any citizen in the exercise "of any right or privilege secured to him by the constitution or laws of the United States." This language does not indicate or fairly imply that the right or privilege secured and exercised must be such right or privilege as is common to all citizens of the United States as such.

While section 5508 is taken, with some slight changes, from section 6 of the enforcement act of May 31, 1870, its construction and

application has not been limited and confined to the protection of the civil rights of citizens, which said enforcement act was designed to protect. This will clearly appear by a brief reference to the cases which have since arisen under said section 5508. Thus in the case of U. S. v. Cruikshank, 92 U. S. 542, the rights alleged to have been interfered with or prevented by the conspiracy were not in fact secured by the constitution or laws of the United States, as claimed; but in respect to that portion or count of the indictment which averred that the conspiracy was intended "to prevent them in the free exercise of the right to peaceably assemble with each other and other citizens for a peaceable and lawful purpose," the court, while holding this was defective and bad, said:

"The right of the people peaceably to assemble for the purpose of petitioning congress for a redress of grievances, or for anything else connected with the powers and duties of the national government, is an attribute of national citizenship, and, as such, under the protection of and guarantied by the United States. If it had been alleged in the indictment that the object of the defendants was to prevent a meeting for such purpose, the case would have been within the statute and within the scope of the soverignty of the United States. Such, however, is not the case. The offense, as stated in the indictment, will be made out if it be shown that the object of the conspiracy was to prevent a meeting for any lawful purpose."

In Ex parte Yarbrough, 110 U. S. 651, 4 Sup. Ct. Rep. 152, the indictment charged that the defendants conspired to intimidate a citizen of African descent in the exercise of his right to vote for a member of congress of the United States, and that in the execution of such conspiracy they beat, bruised, wounded, and otherwise maltreated him. It was held that this conspiracy was embraced within the provisions of section 5508 of the Revised Statutes, because the political right of such a voter to protection from violence in the exercise of his privilege was secured by the constitution of the United States. In the case of U. S. v. Waddell, 112 U. S. 76, 5 Sup. Ct. Rep. 35, the particular right in the exercise of which a citizen was conspired against was that of remaining on the land upon which, under the laws of the United States, he had made a homestead entry, a sufficient time to entitle him under the statute to a patent therefor. This right being secured to him by the laws of the United States, the conspiracy against him in its exercise came within the provisions of section 5508. In Logan v. U. S., 144 U. S. 263, 12 Sup. Ct. Rep. 617, the particular right involved was that of a citizen in the custody of the United States marshal, under a lawful commitment, to be protected against a conspiracy to oppress, injure, or maltreat him. This was a private right, implied from the duty and obligation of the government to protect the citizen while thus in its custody. This right of a citizen in custody of the United States marshal, under a lawful commitment, to answer for an offense against the United States, to be protected against lawless violence, was held to be such right or privilege secured by the constitution and laws of the United States as said section 5508 was intended to protect against a conspiracy to interfere with. In that case it is directly declared that said section is not limited to political rights of citizens. In U. S. v. Lancaster, 44 Fed. Rep. 885, the

particular right or privilege described was that of a citizen of another state, who had obtained a judgment in ejectment in the United States circuit court for the southern district of Georgia, to prosecute contempt proceedings in said court against a party who had violated an injunction granted in the cause. The conspiracy was directed against the plaintiff's agent in the exercise of this private right to institute and prosecute such contempt proceedings, and was held to come within the purview of section 5508. It will be observed that none of the foregoing rights or privileges in the exercise or enjoyment of which the citizen was conspired against were specially embraced or included in said enforcement act of May 31, 1870, but depended upon and were secured by other statutes or constitutional provisions. The proposition that said section 5508 should be read and construed in the light of the objects and purposes which said act of May 31, 1870, was designed to cover and protect, and should not be extended to other rights secured by law, cannot, therefore, be sustained.

It is said by the court in U. S. v. Waddell, supra, that section 5508 is carefully limited in "its operation to an obstruction or oppression in the free exercise of a right or privilege secured by the constitution or laws of the United States, or because of his having exercised such right; * * * that the protection of this section extends to no other right,—to no right or privilege dependent on a law or laws of the state. 'Its object is to guaranty safety and protection to persons (citizens) in the exercise of rights dependent upon the laws of the United States, including, of course, the constitution and treaties as well as statutes, and it does not, in this section, at least, design to protect any other right. * * * Wherever the acts complained of are of a character to prevent this, or throw obstruction in the way of exercising this (federal) right, and for the purpose and with the intent to prevent it, or to injure or oppress a person because he has exercised it, then, because it is a right asserted under the law of the United States and granted by that law, those acts come within the purview of the statute and of the constitutional power of congress to make the statute." It is further stated in this case that, if the acts complained of were the result of an ordinary quarrel or malice, they would be cognizable under the laws of the state and by its courts,—that is to say, mere acts of personal violence by one or more citizens against another are matters of state jurisdiction; but, when the conspiracy is to injure or oppress a citizen in the exercise of a right or privilege secured by the constitution and laws of the United States, the wrongful acts done in its execution become offenses within the jurisdiction of the United States under said section. In other words, when a conspiracy is directed against a citizen in the exercise of a federal right or privilege, with intent and purpose of preventing or obstructing the exercise or enjoyment of such right or privilege, there is an interference with national authority, and the criminal or unlawful acts done in pursuance thereof are included in the provisions of the statute, and come within the legitimate cognizance of the United States and their courts.

In Baldwin v. Franks, 120 U. S. 678, 7 Sup. Ct. Rep. 656, 763, the person conspired against was in the exercise of a right secured by treaty, but, being an alien, it was held that the case did not come within either clause of section 5508. If the party affected or injured by the conspiracy had been a citizen, it is clear that the offense charged would have been embraced by the provisions of said section. In the Case of Neagle, 135 U. S. 1, 10 Sup. Ct. Rep. 658, the authority and duty of the general government to protect its officials, to command and enforce obedience to its laws, and keep the peace of the United States, as contradistinguished from the peace of a state, is strongly maintained, even in the absence of any act of congress on the subject. And in Logan v. U. S., supra, Mr. Justice Gray, after a full review of the previous cases under this section in question, clearly asserted the right and duty of the government to protect against lawless interferences or violence not only prisoners in its custody, but all the officers charged with and engaged in the execution of its laws. The general principles clearly announced and applied in that case have a direct bearing upon, if they do not settle, the questions involved in the case at bar. Under the authority of that decision, if the defendants had been found in possession of the concealed spirits on which the tax imposed by law had not been paid, for which search was being made, and had been arrested by the deputy collectors or their associates and assistants, the deputy marshals, and, while in custody, had been injured by lawless violence under or in pursuance of a conspiracy to defeat or deprive them of the protection to which they were entitled, the conspirators would have committed an offense within the purview of section 5508. It would be a strange construction of the statute to hold that their rights to protection would be provided for and secured against conspiracy while in custody, but that the parties invested with the sovereign's express sanction or direction to make the arrest and retain them in custody, would not be entitled to any protection against a like conspiracy intended to prevent or obstruct them in exercising the right conferred. Is it to be said that the duty of the national government to protect its citizens in the enjoyment of rights or privileges secured by its constitution or laws, and intended for their private advantage or voluntary exercise, is greater, or rests upon a higher obligation, than the duty of protection which it owes to those same citizens, when exercising rights and privileges conferred by law and intended primarily for its benefit? In a general sense, the national government, as a political organization, is interested in the maintenance and preservation of any right or privilege secured to its citizens under its constitution or by its laws, enacted in pursuance of the sovereign power conferred upon it; and, coextensive with such rights or privileges, whether they relate to or concern private or public interests, it has the authority, if not the duty, of extending its protection. In calling upon a citizen to act as its agent or officer, in the exercise of a right or privilege secured by its constitution or laws, the duty of protecting the citizen therein is certainly as great, if not greater, when such right or privilege concerns the government, representing the entire political commu-

nity, as when it relates to the individual alone, and rests within his option to exercise or not. In Ex parte Yarbrough, 110 U. S. 662, 4 Sup. Ct. Rep. 152, the point was made that the parties assaulted were not officers of the United States, and their protection, in exercising the right to vote, did not stand upon the same ground, but Mr. Justice Miller, speaking for the court, said:

"The distinction is not well taken. The power in either case arises out of the circumstance that the function in which the party is engaged, or the right which he is about to exercise, is dependent on the laws of the United States. In both cases it is the duty of that government to see that he may exercise this right freely, and to protect him from violence while so doing, or on account of so doing. This duty does not arise solely from the interest of the party concerned, but from the necessity of the government itself, that its service shall be free from the adverse influence of force and fraud practiced on its agents."

It is not necessary to attempt, if it were practicable, a definition of all the rights, privileges, and immunities of citizens of the United States, secured by the constitution or laws, which are or may be protected against conspiracy in their exercise or enjoyment under said section 5508. In Crandall v. Nevada, 6 Wall. 36, among other rights incident to national citizenship there enumerated, is said to be the right "to share [the government's] offices, and to engage in administering its functions." This is approved in the Slaughter House Cases, 16 Wall. 79. The words "rights" or "privilege" have, of course, a variety of meanings, according to the connection or context in which they are used. Their definition, as given by standard lexicographers, include "that which one has a legal claim to do," "legal power," "authority," "immunity granted by authority," "the investiture with special or peculiar rights." In this enlarged sense they are used in section 5508, with the qualification that the right or privilege must be one derived from or secured by the constitution or laws of the United States to the citizens engaged in its exercise or enjoyment. That such is the meaning of these terms as used in said section will further appear from this consideration: Suppose the parties here alleged to have been conspired against had been sued in the state court for or on account of acts done by them within the scope of the particular rights or privileges set out and described in the indictment, and in such suit had specially set up or claimed that they were exercising said rights and privileges under and in pursuance of authority conferred by the constitution or laws of the United States, and the decision of the highest court of the state had been against the right, privilege, or immunity so set up and claimed, they could have sued out a writ of error from the supreme court of the United States to the supreme court of Tennessee, and had the decision of the latter court reviewed and reversed, under section 709, Rev. St., which embodies and reproduces the twenty-fifth section of the judiciary act of 1789, and the second section of the act of February 5, 1867. This is well settled by the authorities. Upon no other construction can the decisions already referred to be rested, as no other will meet the duty of the government to protect its citizens in the exercise of functions involving rights and privileges, which it has conferred.

An office is a public employment, **conferred by** appointment of government, and in the performance of its functions the citizen selected to represent the sovereign is in the exercise of both a private right or privilege and a public duty. Upon no sound principle, therefore, can it be held that a conspiracy, in cases like the present, should be regarded as directed solely against the official in respect to his representative character, and in no sense against the citizen exercising or enjoying the right or privilege, secured to him by the constitution or laws of the United States, of accepting the public employment, and engaging in administration of its functions, when the statute undertakes to protect the citizen against conspiracy intended to injure, oppress, threaten, or intimidate him "in the exercise or enjoyment of any right or privilege" so secured to him.

It is argued that this construction should not be given to section 5508, because other statutes of the United States make other special provision for the prevention of injury to their officers, and for their protection against combinations and conspiracies to interfere with and obstruct them in the discharge of their duties. Thus by section 3171, Rev. St., it is provided that, "if any officer appointed under and by virtue of any act to provide internal revenue, or any person acting under or by authority of any such officer, shall receive any injury to his person or property for or on account of any act by him done under any law of the United States for the collection of taxes, he shall be entitled to maintain suit for damage therefor in the circuit court of the United States in the district wherein the party doing the injury may reside or be found." This civil remedy for the recovery of damages for a personal injury done the officer is in no way inconsistent with section 5508 as we have interpreted it; on the contrary, it is in perfect harmony therewith. Section 5440 provides that, if two or more persons conspire to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of the conspirators do any act to effect the object of the conspiracy, all the parties thereto are liable to the prescribed penalty. This manifestly has no connection with such an offense as section 5508 relates to. By section 5447, "every person who forcibly assaults, resists, oppresses, prevents, or interferes with any officer of the customs or his deputy, or any person assisting him in the execution of his duties, or any person authorized to make searches or seizures in the execution of his duty," is subject to fine or imprisonment; "and every person who discharges any deadly weapon at any person authorized to make searches or seizures, or uses any deadly or dangerous weapon in resisting him in the execution of his duty, with intent to commit a bodily injury upon him, or to deter or prevent him from discharging his duty, shall be imprisoned," etc. This relates clearly to assaults, resistances, or interferences by an individual, and to the use of deadly or dangerous weapons with intent to commit bodily injury, or to deter or prevent the person authorized from discharging his duty. It does not deal with the case of conspiracy, and the actual commission of personal or bodily injury, and is entirely consistent with sections 5508 and

5509, which only extend the same principle to crimes actually committed in pursuance of a conspiracy to prevent the exercise of the authority conferred by law. By section 5518 (which is substantially the same as the first and second clauses of section 1980) it is provided that, "if two or more persons in any state or territory conspire to prevent by force, intimidation, or threat any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof, * * * or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, * * * each of such persons shall be punished," etc. This statute is in perfect harmony with sections 5508 and 5509, and, instead of showing that congress did not intend by said sections to include the case of a citizen in the exercise of a right or privilege appertaining to official station or function, it tends strongly in the other direction.

It is further claimed by counsel for defendants that, if sections 5508 and 5509 are so construed as to embrace the conspiracy and the crime alleged to have been committed in pursuance thereof, as charged in the indictment, the jurisdiction of the federal courts can be extended over all conspiracies and offenses perpetrated in the execution thereof against any citizen in respect to his life, liberty, or property, and thus absorb, if not supersede, the criminal jurisdiction of the several states over such matters. This is clearly incorrect, as will readily appear from a careful examination of the foregoing authorities, and especially Logan v. U. S., 144 U. S. 285-290, 12 Sup. Ct. Rep. 617, where the previous decisions are reviewed. No provision of the constitution undertakes to secure or to confer upon congress the authority to protect individual rights, such as existed before the establishment of the general government, against private or individual encroachments. By article 4, § 2, of the constitution, the privileges and immunities secured to citizens of each state in the several states included those rights which were common to the citizens in the latter states under their constitution and laws by virtue of their being citizens. This provision did not create the rights which it called "privileges and immunities of citizens of the states." "It threw around them in that clause no security for the citizen of the state in which they were claimed or exercised. Nor did it profess to control the power of the state government over the rights of its own citizens. Its sole purpose was to declare to the several states that, whatever those rights, as you grant or establish them to your own citizens, or as you limit or qualify or impose restrictions on their exercise, the same, neither more nor less, shall be the measure of the rights of citizens of other states within your jurisdiction." Slaughter House Cases, 16 Wall. 76, 77.

By the first section of the fourteenth amendment the states are prohibited from abridging the privileges or immunities of citizens of the United States from depriving any person of life, liberty, or property without due process of law, and from denying to any person within their jurisdiction the equal protection of the laws. This

relates, as has been repeatedly held, to state action, and confers no power or authority upon congress to undertake by it legislation to protect individual rights of person or property not created by or derived directly from the federal government against individual violence or encroachment. It was accordingly held in U. S. v. Cruikshank, 92 U. S. 542, and reaffirmed in Logan v. U. S., 144 U. S. 287, 12 Sup. Ct. Rep. 624, "that a conspiracy of individuals to injure, oppress, and intimidate citizens of the United States with intent to deprive them of life and liberty without due process of law, did not come within the statute, (section 5508,) nor under the power of congress, because the rights of life and liberty were not granted by the constitution, but were natural and inalienable rights of man; and that the fourteenth amendment of the constitution, declaring that no state shall deprive any person of life, liberty, or property without due process of law, added nothing to the rights of one citizen as against another, but simply furnished an additional guaranty against encroachment by the states upon the fundamental rights which belong to any citizen as a member of society. It was of these fundamental rights of life and liberty that the court said, (in U. S. v. Cruikshank, 92 U. S. 553, 554:) 'Sovereignty, for this purpose, rests alone with the states. It is no more the duty or within the power of the United States to punish for a conspiracy to falsely imprison or murder within a state, than it would be to punish for false imprisonment, or murder itself.'" Upon this distinction between rights and privileges existing independent of the constitution or laws of the United States, and those rights and privileges which are created or secured by said constitution, depends the authority of congress to legislate for the protection of citizens. Sections 5508 and 5509 are confined to rights or privileges of the latter class, and can never be allowed to extend to offenses affecting rights or privileges of citizens which exist by state authority, independent of the constitution or laws of the United States.

After the best consideration we have been able to give this matter, our conclusion is that the indictment is good, and that it charges an offense within the jurisdiction of this court. It follows, therefore, that the demurrer should be, and is accordingly, overruled.