## Commonwealth v. Miller.

Charles H. Miller, District Attorney, for Commonwealth.
Charles C. Crowell, for defendant.

HENNINGER, P. J., Aug. 15, 1928.—Defendant was convicted of unlawfully, dishonestly and corruptly performing his duties as member and captain of Troop "B" in the organization of State employees known as the State Highway Patrol. He asks for a new trial, contending that he was not, at the time the act was performed upon which the charge is based, such an officer or employee as is criminally accountable for unlawful, dishonest and corrupt performance of duty. He raised the question by motion to quash the indictment and again by request for binding instructions. No exceptions were

taken to our refusal to quash the indictment, and the question is now before us on a motion for new trial.

In 1923, the State Highway Commissioner of the Commonwealth of Pennsylvania appointed 385 men, including defendant, to the office or position of State highway patrolmen, whose duty it was to patrol the highways of the State and cause the arrest and prosecution of all violators of the motor-vehicle and motor-title laws. Defendant, among others, accepted the position and assumed the duties thereof. The highway patrolmen did not subscribe to the oath required by the Constitution of the State. They arrested on sight. It seems that no such authority had been conferred upon them. The authority for their appointment is found in the Act of Assembly approved May 24, 1923, P. L. 425, and the Act approved June 14, 1923, P. L. 718; the first act being the Motor Title Act and the second the Motor Vehicle Act, the first regulating the ownership and the second the operation of motor-vehicles. The State Highway Patrol was appointed for the purpose of carrying out and enforcing the said acts, their supplements and amendments, the motor-vehicle laws. There is no dispute as to what their duties were. Defendant testified that they were to make informations against violators of said laws. They were paid by the State of Pennsylvania. By the 10th section of the Act of 1923, they are referred to as "officers designated by the Highway Department."

The State Highway Commissioner, after appointing this large body of men, organized them for work by dividing them into troops, placing each troop under the command of a captain, and the entire organization under the command of the Superintendent of the State Police. The troops were divided into companies, stationed at various points in the State, each under the command of a corporal. The entire organization was placed under military or semi-military discipline. Private and officer were required to obey implicitly and without question the orders of his superior officer. The troops were designated "A," "B" and "C." The headquarters of Troop "B" was located at Greensburg, Pennsylvania. Defendant was appointed captain of Troop "B" in 1926. One of the companies of Troop "B" was stationed at Butler, Pennsylvania. R. S. Anderson was appointed corporal thereof. During the month of August, 1927, and for a long time prior thereto, the defendant was captain of Troop "B," R. S. Anderson was corporal, and George E. Manning was a private patrolman in the Butler company.

On Sunday, Aug. 28, 1927, while Private Manning was patrolling the highway leading from Pittsburgh to Butler, he arrested one N. S. Vidal, Jr., on the charge of operating a motor-vehicle within the county of Butler while under the influence of intoxicating liquor, took him to a doctor for examination, who pronounced him under the influence of intoxicating liquor, and gave Manning a certificate stating that fact. Manning then delivered Vidal to the county jail. On Monday morning, Aug. 29, 1927, Manning took Vidal from the county jail to the office of Alderman Phillips, a duly constituted committing magistrate in and for the County of Butler, and there subscribed and swore to an information charging said Vidal with the offense of operating a motor-vehicle within the County of Butler, Pennsylvania, on Aug. 28, 1927, while under the influence of intoxicating liquor. Alderman Phillips issued a warrant thereon, delivered the warrant to a duly constituted constable, who served it on said Vidal by placing him under arrest. Vidal then waived a hearing and was committed to jail to await trial in the Court of Quarter Sessions. Manning had no arresting power, and possibly the original arrest on Aug. 28th was illegal, but that arrest is not involved in this case. It was Manning's duty to make the information against Vidal, as he did, and upon

which Vidal was legally arrested and committed for trial. After Vidal was committed to jail, on Aug. 29, 1927, an attorney from Pittsburgh, one of the Assistant District Attorneys of Allegheny County, called on the committing magistrate and obtained an order granting a hearing, notwithstanding the waiver, and fixing it for Wednesday evening, Aug. 31, 1927. The attorney then inquired of Corporal Anderson, in charge of the company of State highway patrolmen at Butler, for the name of their superior officer, and learned that the defendant, stationed at Greensburg, was such officer. On Tuesday, Aug. 30, 1927, the said attorney, through his friend and associate, another Assistant District Attorney of Allegheny County, applied to the defendant as the superior officer of the members and officers of the Butler company, and as the captain of Troop "B," State Highway Patrol, for a favor, to wit, the release of the said Vidal from the said charge because of his friendship with the first referred to assistant district attorney. Defendant granted the request, called up Corporal Anderson at Butler and ordered the release of Vidal from the charge of operating a motor-vehicle while under the influence of intoxicating liquor. The order was obeyed, as it was Corporal Anderson's and Private Manning's duty to do. The information was withdrawn. Vidal was released. He became, and yet is, a fugitive from justice. The appeal was made to the defendant for Vidal's release, and the request was granted and the order issued by the defendant on the sole ground of friendship and favoritism. Vidal was ordered released by the defendant when it was defendant's duty to order and assist in his prosecution. Defendant was an officer of the Commonwealth and not in position to grant favors. To do so was a plain violation of duty, an unlawful, dishonest and corrupt performance thereof, constituting at common law a criminal offense. Such action on the part of an officer or employee of the State injuriously affects public society, the public policy and the public economy of the State. Defendant was a law-enforcing officer. It was his duty to enforce the laws against all who operate a motor-vehicle within the Commonwealth of Pennsylvania while under the influence of intoxicating liquor. He was charged with the duty of causing informations to be made. It was his duty to order those under him to make the necessary information and prosecute the case. He was doubly an officer in this organization within the ordinary and proper meaning of that term.

Any person who holds an office or position of confidence and trust dealing with public affairs or exercising public or governmental authority is criminally liable for neglect, refusal or dishonest and corrupt performance of duty at common law. A person employed to protect society by enforcing the criminal laws, who accepts the employment and unlawfully, corruptly or dishonestly performs his duty by either giving or selling favors, so that favorite persons escape while friendless ones are punished, is criminally amenable at common law.

"All such crimes as affect public society are indictable at common law. The test is not whether precedents can be found in the books, but whether they injuriously affect the public policy and economy:" Com. v. McHale, 97 Pa. 407, 410.

The act charged against defendant injuriously affects public society. Favoritism in the enforcement of law is a deadly governmental poison. Nothing will so discredit a government and cut so deep into the confidence of its people or furnish a surer or shorter route to anarchism than favoritism in the administration of criminal law. No greater injury can be inflicted upon a republic than for its law-enforcing officers to sell or gratuitously grant

favors in law enforcement. Impartial law enforcement is essential to stable government. Equality before the law is the bulwark of a republic. The boasted declaration that all men are created equal goes for naught if those in authority do not enforce the law impartially. Favoritism by law-enforcing officers stands upon no higher ground than bribery and extortion.

Defendant, in consideration of friendship, has traded official favor, thereby encouraging the commission of crime and disgracing the law that he was employed to, and agreed to, enforce. Webster defines an office as a special duty; a trust; a charge; a position conferred by the exercise of governmental authority, for a public purpose, and an officer as one charged with a duty; one who holds a position of authority or command. Anderson's Dictionary of Law defines a public officer as one who has some duty to perform to the public. The case of United States v. Patrick, 54 Fed. 338, 349, defines an office as a public employment. The case of Richie v. Philadelphia, 225 Pa. 512, defines a constitutional officer as one who exercises public functions and is clothed with some power of sovereignty. Defendant is not a constitutional officer. Many officers are not, viz., policemen, captain of police, overseers of the poor, school directors, etc., yet they are officers amenable criminally for malfeasance in office: Com. v. Norris, 87 Pa. Superior Ct. 61; Com. v. Wilson, 30 Pa. Superior Ct. 26; Com. v. Saulsbury, 152 Pa. 554; Com. v. Brown, 23 Pa. Superior Ct. 470.

In the case of Com. v. Evans, 74 Pa. 124, it was held that a person appointed to collect particular claims was a public officer and amenable at common law for extortion. There is no reason why an officer should be amenable criminally for extortion and not for malfeasance in office, which is defined to be the doing of an act which an officer should not do; evil conduct or illegal deed.

The common law has sufficient power to punish as a misdemeanor any act which directly tends to injure the public, injuriously affect public health, comfort or morality, obstruct or pervert public justice, or the administration of government: 16 Corpus Juris, § 23, page 65.

Defendant's act comes within this definition. It is not of much importance whether he is a constitutional or a non-constitutional officer. "In general, it may be said that any officer, whether Federal, State or municipal, and every person occupying an official or a quasi-official position, may be guilty of extortion at common law:" Com. v. Saulsbury, 152 Pa. 554, 560.

This applies with equal force to malfeasance in office. Defendant holds an official or quasi-official position, such as imposes criminal liability for malfeasance. He is criminally liable at common law for his unlawful, dishonest and corrupt discharge of duty.

Defendant contends that he is not amenable to the criminal law because he has not subscribed to the oath that the Constitution requires. This is no defense: Com. v. Evans, 74 Pa. 124.

Defendant further contends that he is not amenable to the criminal law because he did not have arresting power. This contention is not tenable. The act charged against defendant does not involve the arrest. Defendant is charged with ordering the release of a person who was lawfully arrested and held for court.

Defendant further contends that he is not amenable to the criminal law because the State Highway Commissioner had no authority to appoint him captain over Troop "B," with power to command his fellow-officers. With this contention we cannot agree. He accepted the position and is not in position to question the appointment. We are of opinion that when, by law, the State Highway Commissioner was empowered to appoint a body of men to

enforce the motor-vehicle laws, it carried with it the power to organize them in such manner and form as would, in his opinion, effectively accomplish the end intended. It is incidental to the power granted, and the appointment of captains over the troops was a valid exercise of power conferred. If, however, it is not, it does not leave the defendant in any better position. It was still his duty to prosecute violators as a State highway patrolman in common with Anderson and Manning. If he aided, assisted and abetted them in an unlawful, corrupt and dishonest performance of duty, he is guilty equally with them, for he who aids, assists or abets another in the commission of a crime is himself guilty of the crime.

A careful review of the testimony in this case in the light of all the circumstances convinces us that the defendant's position is untenable, and it follows that a new trial must be denied.

Now, Aug. 15, 1928, motion for new trial refused, defendant directed to appear in court on Monday, Sept. 3, 1928, at 10 o'clock A. M., for sentence. An exception to this order is noted for the defendant.

From Thomas H. Greer, Butler, Pa.