# CITY OF MITCHELL v. DAKOTA CENTRAL TEL-EPHONE COMPANY.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH DAKOTA.

No. 198. Argued March 15, 18, 1918.—Decided April 15, 1918.

The District Court has jurisdiction over a suit in which a telephone company, occupying streets of a city under ordinances passed pursuant to state law, seeks to enjoin, as an unconstitutional impair-ment of its contract rights and as involving a destruction of its property in violation of the due process clause of the Fourteenth Amendment, the execution of a later ordinance or resolution by which the city declares the company's rights at an end, assumes power to terminate them, notifies it to remove its lines and exchange and declares a purpose to take steps to secure their removal.

In a suit by a telephone company against a city involving the question whether plaintiff's right to operate its city exchange system was included with its right to operate its long distance system under a later, existing ordinance contract, or was confined to an earlier ordinance contract which had expired, the state supreme court in another case between the parties having treated the ordinances as independent in adjudging the city entitled to share in the gross receipts under a provision of the former not contained in the latter, *held*, that the judgment, if not actually conclusive upon the District Court, must be accepted as of much weight in determining whether the later ordinance replaced the earlier and gave new contract rights to operate the city exchange.

Grants of rights or privileges by a State or its municipalities are strictly construed; what is not unequivocally granted is withheld; nothing passes by mere implication.

Having granted a nonexclusive right to use streets, etc., for the operation of a local telephone exchange, under which a local system was established, a city passed an ordinance granting the privilege of operating "long distance telephone lines" "within and through" the city, for supplying facilities to communicate "by long distance telephone" or other electrical devices, with parties residing "near or at a distance from" the city; and then another changing the word "lines" to "system," and expressing the proposed communication as with

parties residing "*in*, near or at a distance from" the city. The grantee under the later ordinances acquired the local system, and was also engaged in supplying the city with long distance telephone service. *Held*, that it would be unjustifiable implication to construe the last ordinance as granting a new term for the local exchange system, and such implication could not be supported by interpreting the term "long distance telephone," apart from its usual meaning, as describing the character of instruments and instrumentalities to be employed rather than their sphere of operation.

Reversed.

THE Dakota Central Telephone Company, herein called the telephone company, brought suit against the City of Mitchell, herein called the city, to enjoin it from enforcing or attempting to enforce a resolution or ordinance of the city passed March 17, 1913, terminating the right of the telephone company to maintain and operate the company's system of telephones and requiring the removal of its poles, etc., from the streets and to declare the resolution or ordinance unconstitutional and void.

The bill alleges the following facts, which are the basis of the contentions of appellant. · We state them narratively:

The telephone company is a South Dakota corporation, and under § 554 of the Civil Code of the State has been given the power to operate telegraph and telephone lines within the towns and cities of the State and to use the public grounds, streets, alleys and highways, subject to control of the proper municipal authorities as to which of them the lines shall run over and across, and the places where the poles to support the wires shall be located.

Since its incorporation the company has acquired by purchase and construction certain lines of telephone and certain telephone exchanges and has been engaged as a common carrier in transmitting telephone messages, is so engaged in about 85 cities, and has about 265 tele-

phone stations, other than exchanges, situated in South
Dakota, North Dakota, and Minnesota, and has also,
outside of the lines situated in cities and towns, about
85 exchanges, about 265 stations and about 5,000 miles
of telephone lines.

May 11, 1898, the city granted by ordinance to F. E.
Elce and his associates, heirs and assigns, a right to use
the streets and alleys of the city for the maintenance of
a public telephone system. The right granted was not
exclusive.

Elce duly accepted the terms and conditions of the
ordinance and installed a local telephone system and
conducted and operated it until on or about July 8, 1904.

The Dakota Central Telephone Lines, a South Da-
kota corporation, was given by ordinance dated March 21,
1904, and numbered 174, authority to use the streets of
the city for the purpose of operating long distance tele-
phone lines within and through the city "for supplying
the citizens of Mitchell, and the public in general, facili-
ties to communicate by long distance telephone or other
electrical devices with parties residing near or at a dis-
tance from Mitchell." In consideration of the ordinance
the city was given the right to string wires on the poles
of the company for fire alarm purposes.

The ordinance proved insufficient for its purpose and
on June 6, 1904, a new ordinance was passed. The latter
ordinance amended § 1 of the other so as to enable com-
munication "with parties residing *in*, near or at a dis-
tance from Mitchell." The word in italics was the amend-
ment. And the word "lines" in ordinance No. 174 was
changed to the word "system" in ordinance No. 180.

At the time the last ordinances (Nos. 174 and 180)
were passed the telephone instruments then in general
use could not be used successfully for long distance con-
versations, but there had been developed instruments
for such conversations. Such telephones were then known

as "Long distance telephones" and were only supplied to subscribers at telephone exchanges by special arrangement with the individual subscribers, who desired an instrument efficient for both local and long distance conversations. At said time, however, the art had so far advanced that the public in general were demanding the installation of "Long distance telephones" in local telephone exchanges.

Long prior to the adoption of ordinances 174 and 180 the Southern Dakota Telephone Company had constructed in the city of Mitchell and other towns and cities of the State and had secured the consent of Mitchell to the construction in that city of such lines, commonly known as "Toll lines" as distinguished from telephone exchanges. In 1903 the Dakota Central Telephone Lines purchased those toll lines and was operating them at the time of and long prior to the adoption of ordinances 174 and 180.

That company, relying upon the consent of the city as expressed in ordinance 174, purchased from Elce the property then and now known as the Mitchell Telephone Exchange, consisting of the poles and other property as well as certain real property used in connection therewith. After entering into the contract to purchase and upon discovering the insufficiency of ordinance 174, the company applied to the city for ordinance 180, and when it was passed completed the purchase from Elce and took possession of the property and owned and operated the exchange with all other exchanges until October 2, 1904, when it sold all of its rights to complainant, Dakota Central Telephone Company, and the latter company has since continuously operated the exchange and toll lines.

Thereafter there was such improvement in telephone instruments and appliances that it became desirable to reconstruct the telephone exchange in the city, and in order to install a telephone system known as the "Auto-

matic" it became necessary to put in permanent underground ways in which to place the wires and cables and otherwise construct and install expensive instruments, and in order to be secure in making such extensive improvements the company applied for and obtained permission by ordinance "to place, construct and maintain through and under the streets and alleys, and public grounds of said city, all conduits, manholes and cables proper and necessary for supplying to the citizens of said city and the public in general communication by telephone and other improved appliances." [This is referred to hereafter as the resolution of April 10, 1907.]

Relying on the ordinance [resolution] and the other ordinances, the company began to reconstruct and extend its telephone exchange in the city, and continued such work until the plant was thoroughly prepared for the installation of the "Automatic System." As part of the improvements the company erected a fireproof exchange building, it and the system causing an expenditure of $110,000. The system is now in operation and has about 1100 subscribers, all of whom are in direct communication and can communicate with persons at all the exchanges and stations of the company's telephone system in South Dakota, North Dakota, and Minnesota.

The company has complied with all of the requirements of the ordinance and has acquired a vested right to maintain and operate the exchange and lines described.

The company owns and operates lines from the city to other cities and other States than South Dakota (these are all mentioned in the bill) and the tolls for such interstate communication amount to more than $4,000 a month. It has also contracted with the United States Government whereby it receives and transmits and delivers the messages of the officers of the Weather Bureau to 32 cities and towns situated on its lines in South Da-

kota. It also furnishes telephone service to other officers of the Government in various towns and cities and places, and that this service may not be interfered with it seeks relief.

The ⅃ity, assuming it had the right to require the removal of the company's lines and exchange from the city and from the streets and alleys therein, and assuming that the rights of the company would expire May 11, 1913, and further assuming the right to terminate the company's rights, did, on March 17, 1913, notify and request it to remove from the city its poles, wires, cables, fixtures and apparatus of every kind and description used by it in the construction, maintenance and operation of its local telephone exchange or system in the city and that if it failed to do so, the city would take steps to secure the immediate removal of the described instruments.

At the same meeting the city adopted two other resolutions, one called "Telephone Resolution," by which it declared the right of the company terminated from and after May 11, 1913, and in which it directed the officers of the city not to contract with the company for telephone service and on the said date to terminate all relations with the company; the other, called "Fire Alarm Resolution," which also declared the rights of the company terminated May 11, 1913, and then provided for the fire alarm service to take the place of that supplied by the company.

The threatened removal and consequent destruction of the company's telephone system and the deprivation of rights will cause the company damage to the amount of $110,000.

Besides the above facts the bill alleges that the ordinance or resolution of the city for the removal of the poles and lines of the company has the force and effect of a law of South Dakota within the intent and meaning

of § 10, Art. I, of the Constitution of the United States and, so construed, is a law impairing the obligation of the contracts existing between the company and the city. That the value of the company's exchange and lines consists largely in installing the poles, wires and other apparatus; that if taken down the salvage will be nominal and that therefore the removal thereof will deprive the company of its property without due process of law in violation of the Fifth Amendment to the Constitution of the United States. That the wrongs done and threatened will also obstruct and interfere with the dispatch and transmission of interstate business in violation of the Constitution and laws of the United States and of the act of Congress regulating interstate commerce.

An injunction was prayed.

The answer of the city in most part tenders only issues of law; in other words, the effect of the ordinances of the city. The following facts, however, are averred, stated narratively: The company, for a long time after the passage of ordinances 174 and 180, made no claim that its local exchange was not maintained and operated under ordinance 135 (ordinance of Elce) or that that ordinance was in any way repealed or superseded or modified by the other ordinances or that the company was operating a local telephone system under those ordinances, but, on the contrary, the company has complied with all of the terms and conditions of ordinance 135.

The company has frequently negotiated with the city for a renewal or extension of its franchise from and after May 11, 1913, but a renewal or extension has not been granted; and both the company and the city have construed ordinance 135 as in full force and effect and it has in no way been repealed, superseded or modified.

The company did not inform the city or any of its officers of its desire to install an automatic telephone

system and made the improvement with full knowledge of the city's attitude, and in the early part of the year 1913 the company attempted to force the automatic system into the city, regardless of the wishes of the municipal authorities, by securing the consent of the individual citizens thereof to the installation of such telephones, and immediately upon learning of such attempt the city council, March 26, 1912, passed separate ·solutions defining the city's attitude.

The company is operating two systems in the city, a local and a long distance system, the former under ordinance 135, (that granted to Elce) and the latter under ordinances 174 and 180; that the rights under ordinance 135 expired May 11, 1913, that the resolutions of which the company complains apply only to ordinance 135, that is, to the local telephone exchange, and do not and were not intended to apply to the long distance system, and the city expressly denies any purpose or intention to interfere with or molest the company in the maintenance and operation of the long distance system.

The city pleads a judgment rendered in a suit in which it was complainant against the company, by which the rights that the latter now asserts were adjudicated against it, and prays, by reason of the premises, that the bill of the company be dismissed.

After hearing, upon a stipulation of certain facts and oral testimony, a decree was entered adjudging the ordinance of the city of March 17, 1913, unconstitutional and void in that it impaired the obligations of the contract contained in ordinance 180, in violation of § 10, Art. I, of the Constitution of the United States, and deprived the company of its property without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States, and enjoined the city from enforcing the ordinance.

This appeal was then allowed.

*Mr. Lauritz Miller,* with whom *Mr. Edward E. Wagner* was on the brief, for appellant.

Their contention on the jurisdictional question was as follows: The resolution sought to be enjoined has not such dignity or force of law as could impair the obligation of an existing contract, or deprive plaintiff of anything without due process of law. *City of Mitchell* v. *Dakota Central Telephone Co.,* 25 S. Dak. 409–420.

Conceding for the purpose of argument that the resolution has the force of law, still it does no more than declare the city's position upon the question at issue, and impairs no vested right, nor deprives the company of anything it already possessed. *St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 142; *Dawson* v. *Columbia Trust Co.,* 197 U. S. 178; *Des Moines* v. *Des Moines City Ry. Co.,* 214 U. S. 179; *Cleveland* v. *Cleveland City Ry. Co.,* 194 U. S. 517–530; *Hamilton Gas Light Co.* v. *Hamilton,* 146 U. S. 258; *Curtis* v. *Whitney,* 13 Wall. 68.

The distinction between the provisions of the resolution and the one under consideration in *Iron Mountain R. R. Co.* v. *Memphis,* 96 Fed. Rep. 113, that is to say, the reason for the application of the rule contended for by the plaintiff in the latter, while it should not be applied to this case, is clearly pointed out by Mr. Justice Holmes in *Des Moines* v. *Des Moines City Ry. Co., supra.* It was the element of force contemplated by the resolution in the *Memphis Case* which the court thought deprived the company of its property without due process. In this case, as we have seen, the resolution notified the plaintiff company of the expiration of its rights under Ordinance No. 135, and that unless it removed its poles, etc., the city "would take such steps as might be necessary to secure the immediate removal of said poles, etc."

*Mr. T. H. Null,* with whom *Mr. Max Royhl* was on the brief, for appellee. As to jurisdiction:

The resolution of March 17, 1913, was equivalent to a law of the State impairing the obligation of appellee's contract rights. See *North American Cold Storage Co.* v. *Chicago,* 211 U. S. 306, 314. It was within the scope of powers delegated by statute to the city. It is immaterial whether the action is labeled "ordinance" or "resolution." But that the impairment may be by resolution is too well established to be open for discussion. *Northern Pacific Ry. Co.* v. *Duluth,* 208 U. S. 583; *Vicksburg* v. *Vicksburg Waterworks Co.,* 202 U. S. 453; *Iron Mountain R. R. Co.* v. *Memphis,* 96 Fed. Rep. 113; *Atchison, Topeka & Santa Fe Ry. Co.* v. *Shawnee,* 183 Fed. Rep. 85.

Appellant attempts to bring this case within the rule in *St. Paul Gas Light Co.* v. *St. Paul,* 181 U. S. 142; *Dawson* v. *Columbia Trust Co.,* 197 U. S. 178; and *Des Moines* v. *Des Moines City Ry. Co.,* 214 U. S. 179. In the *St. Paul Case,* the court says, "No legislative act is shown to exist, from the enforcement of which an impairment of the obligations of the contract did or could result." In the *Dawson Case,* the court says, "There was no legislation subsequent to the contract." In the *Des Moines Case,* the court says, "We are of the opinion that this (the city resolution) is not a law impairing the rights alleged by appellee." "That the only menace to appellee was the direction to the city solicitor to bring suit to determine the right of the parties." The present case comes squarely within the rule announced in *Owensboro* v. *Cumberland Telephone Co.,* 230 U. S. 58. There the offending ordinance required the telephone company to remove its poles and wires from the streets within a reasonable time and upon failure to remove the mayor was directed to have them removed. In the case at bar the ordinance or resolution terminates the rights of the company and declares the company shall have no right after May 11, 1913, to operate a telephone exchange and requires the company to forthwith on May 11, 1913, remove its property from the

streets and in case of its failure to so remove the city
council will secure the immediate removal of the same.
See *Atchison, Topeka & Santa Fe Ry. Co.* v. *Shawnee,
supra;* and *Northern Pacific Ry. Co.* v. *Duluth, supra.*

MR. JUSTICE MCKENNA, after stating the case as above,
delivered the opinion of the court.

Counsel agree that the issues on this appeal are: (1)
The jurisdiction of the District Court. (2) The scope
and interpretation of ordinances Nos. 174 and 180. (3)
Whether the judgment pleaded by the city is *res ju-
dicata.*

The first proposition needs but little comment. The
company attacked the ordinance or resolution of the
city requiring the company to remove its poles and wires
from the streets as an impairment of the contract consti-
tuted by other ordinances and hence invoked against the
city the contract clause of the Constitution of the United
States and also, on account of the asserted destruction
of its property, urged in its protection the due process
clause. The city combated both propositions. The Dis-
trict Court, however, sustained both, resting its deci-
sion upon the opinion of the Supreme Court of the State
in a suit by the city against the telephone company.
*City of Mitchell* v. *Dakota Central Telephone Co.*, 25 S.
Dak. 409. We shall presently consider this case. For
the disposition of the present contention it is enough to
say the case was brought by the city to recover a percent-
age of gross receipts of the company as provided in ordi-
nance 135. In resistance the company contended that
the provision was inserted without authority and was
illegal and void, and contended besides that its rights
in the streets were not derived from the city but from
§ 554 of the Civil Code of the State and that it was not
competent for the city to impose conditions upon the

company. The court rejected the contentions and held that under the constitution of the State the city had the right to grant or withhold its consent to the use of its streets, and it necessarily had the right to grant the same upon such terms and conditions as it might choose to impose.

Applying the case, the District Court sustained the validity of ordinance No. 135, but decided that it expired by limitation of time in May, 1913, and that necessarily the rights granted by it terminated on that date, and that the company's rights, if it had any, were derived from ordinance 180 and the resolution of April 10, 1907.[1] The court considered the former a valid exercise of the power of the city and a contract between it and the company which was impaired by the subsequent resolutions.

It will be seen, therefore, that the company invoked rights under the Constitution of the United States and the District Court considered them to be substantial, not formal, and accordingly exercised jurisdiction.

The second and third propositions mingle in discussion. The District Court decided, as we have said, that ordinance 180 constituted a contract between the city and the company, and, exerting the right to interpret it, further decided that it gave the company the right to occupy the streets and compelled an injunction against the city's resolution and attempt to remove it. We shall spend no time in vindication of the exertion of the right; it is an established right of the federal courts, when the

---

[1] "Be it resolved, by the City Council of the City of Mitchell, South Dakota, that the right is hereby granted to the Dakota Central Telephone Company, their successors or assigns, to place, construct and maintain through and under the streets and alleys, and public grounds of said city all conduits, manholes and cables proper and necessary for supplying to the citizens of said city and the public in general communication by telephone and other improved appliances."

contract clause of the Constitution of the United States is invoked, and we pass immediately to the consideration of ordinance No. 180. As we have seen, it was preceded by some years by ordinance No. 135, and by some months by ordinance No. 174. It was passed, it is contended, to complete the latter; in what respect we shall presently consider.

The case centers upon the ordinance. The telephone company contends that it gives the company the right to operate not merely long distance lines, but a local telephone exchange within the city. In other words, the contention is that it superseded ordinance No. 135 and became a new source of right, a right both of long distance and local exchange. The city opposes this construction and insists that the ordinance confers only the right to maintain a long distance system; that the right to a local exchange was given by ordinance No. 135 and expired with the expiration of that ordinance, May, 1913. And the city urges that its characterization of ordinance No. 180 was sustained by the Supreme Court of the State in *City of Mitchell* v. *Dakota Central Telephone Co., supra.*

Counsel are at odds as to the case. It, as we have seen, was brought by the city against the company to recover a certain percentage of the gross receipts of the company, provided to be paid by § 4 of ordinance No. 135. One of the defenses of the company was that that ordinance was in effect repealed and superseded by ordinance No. 180 so far as it related to the payment of the percentage of the gross proceeds of the company. The Supreme Court decided against the defense, reversing the judgment of the trial court. The court, in answer to the contention of the company, held that ordinance No. 180 did not "have the effect of repealing, qualifying, or modifying ordinance No. 135, and the fact that the defendant [the company] paid the 10 per cent. on its gross proceeds for two years subsequently to the adoption of ordinance

No. 180 clearly shows that it did not claim, for a time at least, that ordinance No. 180 in any manner affected the prior ordinance . . . There is clearly no inconsistency between the two ordinances; one being for a local city telephone system, and the other being for a long distance telephone system."

The court also decided that the resolution of the city of April 10, 1907, had not the effect of repealing ordinance No. 135, but had only the purpose of giving to the company permission to place its wires underground instead of stretching them on poles in the streets.

The decision would seem to need no comment. It clearly adjudged that the ordinances had different purposes, and that ordinance No. 135 was not repealed in any particular by No. 180, the former applying to the local system and the latter to the long distance system.

The District Court, however, did not give the decision this broad effect but considered that it concluded only "that the two ordinances did not cover so exactly the same field and scope that it could be fairly said that the city intended by the passage of ordinance No. 180 to repeal ordinance No. 135." It is not very obvious how ordinance No. 135 could exist for one purpose and not for all the purposes for which it was enacted; how it could exist for the exaction of a revenue from the system and not exist for the system; how it could co-exist for nine years with No. 180 and yet have been superseded by the latter. Besides, the Supreme Court distinguished between the two ordinances, declaring that there was no inconsistency between them, "one being for a local city telephone system, and the other being for a long distance telephone system." The decision, indeed, gave emphasis to the distinction. From the operation of one a revenue was exacted, upon the other no condition was imposed.

It is, however, alleged in the bill that the company had

by certain enumerated acts acquired a vested right to maintain and operate its telephone exchange and lines, and to secure its peaceable enjoyment of such rights as against the wrongful acts of the city it brought this suit. This idea is not pressed in the argument and is not sustained by the stipulated facts. The case is rested upon "the scope and interpretation to be placed upon Ordinances Nos. 174 and 180," the contention being that they constitute a contract the obligation of which the resolution of the city, requiring the removal of the company's poles and wires from the streets, impairs. And such was the decision of the District Court. The basis of the contention and decision is that those ordinances superseded ordinance No. 135, taking the place of the latter, giving all the rights of a local exchange as the latter did and adding to them the rights of a long distance system; and this conclusion is deduced from the words of the ordinances and explanatory circumstances, the necessary connection, it is said, and the utility of the local system to the long distance system.

First, as to the titles of the ordinances and the words of each that are said to be determinative of their meaning. The title of No. 174 is as follows: "An ordinance to grant permission to the Dakota Central Telephone Lines (Inc.), their successors or assigns, the right to erect poles and fixtures, and to string wires for the purpose of operating long distance telephone lines, within and through the city of Mitchell, South Dakota."

Section 1 provides that "the right and privilege given" shall be for a period of twenty years "for supplying the citizens of Mitchell, and the public in general, facilities to communicate by long distance telephone or other electrical devices with parties residing near or at a distance from Mitchell, and all such rights to be continued on the conditions therein named."

The title of ordinance No. 180 is exactly the same as

that of No. 174, except that the word "lines" of the latter
is changed to the word "system" by the former. Sec-
tion 1 of No. 180 is the same as section 1 of No. 174, ex-
cept certain immaterial changes and except the word
"in" in the provision expressing the purpose of the
granted privilege to be "to communicate by long dis-
tance telephone or other electrical devices with parties
residing *in*, near or at a distance from Mitchell . . ."

Stress is put upon the words "system," "within,"
"through," "in," and "near," and it is insisted that
they were necessarily intended to accommodate the resi-
dents of the city and to give them the facilities of local
and long distance telephone service and that something
more was intended than to grant a mere right to carry
long distance telephone wires through the city.

The contention has its strength and persuaded the Dis-
trict Court, but it is countervailed by other considera-
tions. Undoubtedly the inducement of ordinances Nos.
174 and 180 was to give to the residents of the city
long distance telephone facilities, but it cannot be said
that granting such right inevitably or even naturally
repealed or superseded the right to operate a local
system which was given and then existed under ordi-
nance No. 135, and which then had nine years to run.
Besides, the decision of the Supreme Court is a factor
of controlling strength. It explicitly decided that ordi-
nances 135 and 180 had distinct purpose and operation
and that the latter did not repeal or supersede the former.
The issue was tendered by the company and the decision
upon it is conclusive against the company.

But if the decision be not given that extent, as it was
not by the District Court, and if it be considered that the
latter court had a right, as a federal court, to determine
the existence of a contract and its elements, such right
does not preclude a deference to the views of the state
court, which, moreover, have the support of principles

declared by this court, that grants of rights and priv-
ileges by the State. or of any of its municipalities are
strictly construed ·"and whatever. is not unequivocally
granted is withheld; nothing passes by mere implication."
*Knoxville Water Co.* v. *Knoxville,* 200 U. S. 22, 34; *Blair*
v. *Chicago,* 201 U. S. 400, 471.

The contentions of the company in the case at bar
rest. entirely upon implication, the implication of a re-
peal of one ordinance by another, which is never favored,
though the ordinances expressed different purposes and
could, and did co-exist for such purposes; and this im-
plication is made to depend upon another, that is, that
the ordinary meaning of the words "long-distance tele-
phone" used in ordinance No. 180 is translated to sig-
nify and derive meaning from the function of the instru-
mentalities employed, such as transmitters, receivers,
poles, wires, switching devices and battery systems, etc.

We may conclude the discussion with the observation
that if ordinance No. 180 had been intended to embrace
and continue the right granted by ordinance No. 135
and to grant a further right of a long distance telephone
system, there was a simple and direct way of doing it,
clear to every understanding, and it would not have been
left to be collected from disputable circumstances and the
function of instruments known only to experts. At any
rate, as it has been so left, the ambiguity resulting must
be resolved against the telephone company. It should
have taken care that the right it sought was clearly de-
fined.

It will be observed that the city expressly declares
that it does not intend to interfere with or molest the
telephone company in the maintenance and operation
of the long distance system, and that the resolution or
ordinance of which the company complains is directed
only to the telephone system provided for in ordinance
No. 135. After certain recitations and whereases it is

as follows: "Be it further resolved that said Dakota Central Telephone Company be, and it is hereby notified and requested forthwith on the 11th day of May, 1913, to remove from the streets, avenues, alleys and public grounds of the City of Mitchell, South Dakota, all of its poles, wires, cables, fixtures and apparatus of every kind and description used by it in the construction, maintenance and operation of its local telephone exchange or system in the City of Mitchell, South Dakota."

Whatever is necessary, therefore, for the maintenance and operation of the long distance system provided for in ordinance No. 180 is not intended to be disturbed. We must leave the adjustment, however, to the District Court.

> *Decree of the District Court reversed and the case remanded for further proceedings in conformity with this opinion.*