## CITY OF PARAGOULD, ARK., et al. v. ARKANSAS UTILITIES CO.

### No. 9808.

Circuit Court of Appeals, Eighth Circuit.

April 18, 1934.

Rehearing Denied May 22, 1934.

Jeff Bratton and W. W. Bandy, both of Paragould, Ark., for appellants.

D. H. Cantrell, of Little Rock, Ark., and William F. Kirsch, of Paragould, Ark. (Edwin Bevens, of Helena, Ark., on the brief), for appellee.

Before STONE and SANBORN, Circuit Judges, and WYMAN, District Judge.

SANBORN, Circuit Judge.

In January, 1933, at a special election in the city of Paragould, Ark., a bond issue of $100,000, for the purpose of building a municipal electric light and power plant and distribution system, was authorized. The mayor and city council took steps to sell the bonds and employed engineers to design and erect the plant. The Arkansas Utilities Company, which already had a plant and distribution system in the city and was furnishing electric light and power to its people, brought this suit to enjoin the city and its officers from taking any further steps toward the building of the municipal plant. The court below granted an injunction, and from its decree this appeal is taken.

The theory upon which the suit was brought and the decree granted was that the Utilities Company had a contract or franchise with the state of Arkansas which exempted it from competition in the city of Paragould so long as it furnished adequate service at reasonable rates and so long as public necessity and convenience required no more than the one plant and distribution system in that city; that the rates and service furnished by the Utilities Company had been satisfactory; that the erection by the city of a municipal plant was unnecessary and inconvenient; and that the building of the additional plant and distribution system would destroy the value of the Utility Company's property used and useful for supplying electricity in the city.

The circumstances out of which this controversy arises are, in substance, as follows:

In 1915 the city had granted a nonexclusive fifty-year electric light and power franchise to the Arkansas Light & Power Company. Under this franchise the city retained the right to grant similar franchises to others and to build its own plant. In 1919 the General Assembly of the State of Arkansas passed Act No. 571 (Act No. 571, General Acts of the General Assembly of the State of Arkansas 1919, p. 411, entitled, "An Act to Create the Arkansas Corporation Commission and to Define Its Powers and Duties," approved April 1, 1919), the effect of which was to take away from the municipalities of the state the power to grant such franchises. The act substituted indeterminate permits from the state for municipal franchises, provided that the holders of such franchises might exchange them for indeterminate permits, and placed the granting of such permits and the regulation of utility companies thereunder in a state commission known as the Corporation Commission. Under the act, mu-

nicipalities had the right to purchase existing utilities; but, in order to build a plant to compete with an existing utility, it was necessary for any person, corporation, or municipality to procure from the Commission a certificate that public convenience and necessity required such construction. The Commission was authorized to grant such certificates whenever, after due hearing, it determined that such construction was necessary or convenient for the public service. The purpose of the act was apparently to substitute state regulation for municipal regulation of public utilities, to prevent wasteful competition, and at the same time to enable the municipalities of the state to own their own plants by acquiring them at a fair price from their proprietors. See Wisconsin Power & Light Co. v. City of Beloit (Wis.) 254 N. W. 119.

On February 11, 1921, the Arkansas Light & Power Company surrendered its franchise and received an indeterminate permit from the state "authorizing it to operate said electric light and power plant and distributing system within said city of Paragould, Arkansas, subject to all the terms, conditions and limitations prescribed in Act No. 571 of the regular session of the 1919 General Assembly of the State of Arkansas." This permit was to continue in force until the city should exercise the right to purchase, in accordance with the provisions of the act or until it should be "otherwise terminated according to the law." Section 14, Act No. 571 (page 424).

Four days after the Arkansas Light & Power Company received its permit, the General Assembly of the state passed Act No. 124 of 1921, amending Act No. 571 of 1919 (Act No. 124, Acts of the General Assembly of the State of Arkansas 1921, p. 177, approved February 15, 1921). By the terms of this amendatory act, the Corporation Commission was abolished and the Railroad Commission created. The Railroad Commission was given jurisdiction over light and power companies outside of municipalities, but the regulation of such utilities within the limits of municipalities was restored to the municipalities. The municipalities were expressly granted the right to construct and operate their own plants and distribution systems, and retained the right to purchase existing plants at a price to be determined by the Railroad Commission. Under Act No. 124 (page 197, § 15) any company which had exchanged a franchise for an indeterminate permit might, within 90 days after the passage of the act, recover its former franchise, but, if it elected to operate under its permit,

it was permitted to do so under the same terms and conditions specified in the permit, but subject to regulation in the same manner and to the same extent, and with like force and effect, as in the case of other and like utilities. Section 13 of Act No. 571 (page 423)—which provided that "No public service corporation, person, municipality or improvement district, shall begin construction of any plant or utility of any character, which is not in substitution of any existing plant or utility or in extension thereof or in addition thereto within the corporate limits in which it operates, without first having obtained from the commission a certificate that public convenience and necessity require such construction," and that "the commission shall have the power to grant the permission and approval herein specified whenever it shall, after due hearing, determine that such construction of such exercise of the right, privilege or franchise is necessary, or convenient for the public service"—was expressly repealed by Act No. 124 (page 207, § 25).

The Arkansas Light & Power Company did not surrender its permit, but continued to operate under it until December 15, 1924, when it sold its property in the city of Paragould, together with its permit, to the appellee Utilities Company.

The Utilities Company has continued to furnish electric light and power to the city and its people since that time at rates approved by the city council, and its plant and distribution system are and have been adequate to care for all the needs of the city's 6,000 inhabitants, and, so far as public convenience and necessity are concerned, there is no occasion for duplicating the present plant and distribution system in which the appellee has invested some $359,000. The erection by the city of its proposed plant will largely, if not wholly, destroy the value of the appellee's property.

The city questions the jurisdiction of the federal court on the theory that under the laws of the state there is an adequate remedy at law in the state courts. We see no merit in this contention and think that it is sufficiently answered by the case of Railroad and Warehouse Commission of Minnesota v. Duluth Street Railway Co., 273 U. S. 625, 47 S. Ct. 489, 71 L. Ed. 807. The jurisdictional amount is involved. The appellee bases its right to the relief which it seeks upon the contract clause (article 1, § 10) of the Federal Constitution, and the due process clause of the Fourteenth Amendment.

The important question in this case is whether, after the passage of Act No. 124, the

Arkansas Light & Power Company and its successor, the Utilities Company, retained the right to the conditional immunity from competition provided by section 13 of Act No. 571 and which the General Assembly obviously attempted to take away by repealing that section.

When private rights of an indefeasible nature are sought to be derived from regulatory provisions, the case is peculiarly one for the application of the universal rule that grants of special franchises and privileges are to be strictly construed in favor of the public right, and nothing is to be taken as granted concerning which any reasonable doubt may be raised. Louisville Bridge Co. v. United States, 242 U. S. 409, 417, 37 S. Ct. 158, 61 L. Ed. 395. Only that which is granted in clear and explicit terms passes by a grant of property, franchises, or privileges in which the government or the public has an interest. Coosaw Mining Co. v. South Carolina, 144 U. S. 550, 562, 12 S. Ct. 689, 36 L. Ed. 537. "So strictly are private persons confined to the letter of their express grant that a contract by a city not to grant to any person or corporation the same privileges that it had given to the plaintiff was held not to preclude the city itself from building waterworks of its own. Knoxville Water Co. v. Knoxville, 200 U. S. 22, 35, 26 S. Ct. 224, 50 L. Ed. 353, 359." Madera Waterworks v. Madera, 228 U. S. 454, 456, 33 S. Ct. 571, 572, 57 L. Ed. 915. See, also, Charles River Bridge v. Warren Bridge, 11 Pet. 420, 544-548, 9 L. Ed. 773; Perrine v. Chesapeake & Delaware Canal Co., 9 How. 172, 192, 13 L. Ed. 92; Vicksburg v. Vicksburg Waterworks Co., 202 U. S. 453, 469, 26 S. Ct. 660, 50 L. Ed. 1102, 6 Ann. Cas. 253; Blair v. Chicago, 201 U. S. 400, 471, 26 S. Ct. 427, 50 L. Ed. 801; Piedmont Power & Light Co. v. Graham, 253 U. S. 193, 194, 40 S. Ct. 453, 64 L. Ed. 855; City of Mitchell v. Dakota Central Telephone Co., 246 U. S. 396, 412, 38 S. Ct. 362, 62 L. Ed. 793; District of Columbia v. R. P. Andrews Paper Co., 256 U. S. 582, 587, 41 S. Ct. 545, 65 L. Ed. 1103; Durham Public Service Co. v. City of Durham, 261 U. S. 149, 152, 43 S. Ct. 290, 67 L. Ed. 580; Fort Smith Light & Traction Co. v. Board of Improvement of Paving District, 274 U. S. 387, 389, 390, 47 S. Ct. 595, 71 L. Ed. 1112; Reichelderfer v. Quinn, 287 U. S. 315, 321, 53 S. Ct. 177, 77 L. Ed. 331.

The question which confronts us appears to have been answered by the Supreme Court of the United States adversely to the claim of the appellee. In the case of Frost v. Corporation Commission of Oklahoma, 278 U. S. 515, 49 S. Ct. 235, 236, 73 L. Ed. 483, it appears that, by a statute of Oklahoma passed in 1915, cotton gins were declared to be public utilities to be operated under permits from the State Corporation Commission. No gin could be operated without a license from the Commission and a satisfactory showing of public necessity. In 1925 (chapter 109), the Legislature added to the section requiring such a showing this proviso: "Provided, that on the presentation of a petition for the establishment of a gin to be run co-operatively, signed by one hundred (100) citizens and tax payers of the community where the gin is to be located, the Corporation Commission shall issue a license for said gin." Frost had acquired a license to operate a gin at Durant, Okl. A co-operative gin company made application for a similar license. Frost protested against the granting of such permit. The Commission, at the hearing, held that, although there was no showing of public necessity, it was required, under the proviso, to grant a license. Frost then brought suit to enjoin the issuance of the license upon the ground that the proviso was invalid as contravening the due process and equal protection of the law clauses of the Fourteenth Amendment. The court held that the right to operate a gin and collect tolls therefor, as provided by the Oklahoma statute, was not a mere license, but a franchise and constituted a property right within the protection of the Fourteenth Amendment; that, while the right acquired did not preclude the state from making similar valid grants to others, it was exclusive against any person attempting to operate a competing gin without a permit or under a void permit; and that a suit in equity by the licensee would lie against an invasion of his rights under the franchise. It was further held that the proviso was invalid as denying to Frost the equal protection of the laws. The court then considered the effect of the invalidity of the proviso upon the substantive provisions of the statute which it qualified, and held that, if the effect of the proviso was to destroy the entire section of the law requiring a showing of public necessity, then Frost would be entitled to no relief, "since, in that event, although the proviso be bad, the inequality created by it would disappear with the fall of the entire statute and no basis for equitable relief would remain." This, it seems to us, is equivalent to saying that if the Legislature had destroyed or repealed the section providing for the lim-

ited immunity from competition, Frost could not have maintained his suit, and there would have been no violation of the Fourteenth Amendment and no right which Frost could have protected. It might, perhaps, be urged that the court was considering only the inequality created by the proviso, and not whether the section of the law providing for a showing of public necessity was a part of Frost's franchise. But that question was involved in the case, since the very purpose of Frost's suit was to protect his franchise, which he contended included the right to conditional immunity from competition. This clearly appears from the dissenting opinion of Mr. Justice Brandeis, who, on page 533 of 278 U. S., 49 S. Ct. 235, 242, says: "Frost claims on another ground that his constitutional rights have been violated. He says that what the statute and the Supreme Court of Oklahoma call a license is in law a franchise; that a franchise is a contract; that where a constitutional question is raised this court must determine for itself what the terms of a contract are; and that this franchise should be construed as conferring the right to the conditional immunity from competition which he claims. None of the cases cited lend support to the contention that the license here issued is a franchise. They hold merely that subordinate political bodies, as well as a Legislature, may grant franchises; and that violations of franchise rights are remediable, whoever the transgressor. Moreover, the limited immunity from competition claimed as an incident of the license was obviously terminable at any moment. Compare Louisville Bridge Co. v. United States, 242 U. S. 409, 37 S. Ct. 158, 61 L. Ed. 395. It was within the power of the Legislature, at any time after the granting of Frost's license, to abrogate the requirement of a certificate of necessity, thus opening the business to the competition of all comers." Mr. Justice Stone, in his dissenting opinion, on page 551 of 278 U. S., 49 S. Ct. 235, 248, says: "Whether the grant appellant has received be called a franchise or a license would seem to be unimportant, for in any case it is not an exclusive privilege. Under the Constitution and laws of Oklahoma the Legislature has power to amend or repeal the franchise, Constitution of Oklahoma, art. 9, § 47; Choctaw Cotton Oil Co. v. Corporation Comm., 121 Okl. 51, 247 P. 390; and injury suffered through an indefinite increase in the number of appellant's competitors by nondiscriminatory legislation, would clearly be damnum absque injuria."

It seems to us, in the light of the decision in the Frost Case, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483, that the contention of the appellee here that section 13 of Act No. 571 became perpetually a part of its franchise and contract with the state of Arkansas can not be sustained, and that it must be held that section 13 constituted nothing more than a barrier erected by the state between the persons who received indeterminate permits under Act No. 571 and those who might wish to compete with them, which barrier the state might raise, lower, or completely remove, provided that this was done through nondiscriminatory legislation.

The Supreme Court of Wisconsin, in Wisconsin Power & Light Co. v. City of Beloit, supra, 254 N. W. 119, in holding that the public utility law of Wisconsin, which is similar to Act No. 571 of Arkansas, has not been so amended as to permit a city to build an electric plant without procuring a certificate of public convenience and necessity, has impliedly recognized that the Legislature of the State of Wisconsin has the power to amend the provisions of the law requiring such certificates.

Moreover, the Supreme Court of the United States, in affirming the Supreme Court of Arkansas (169 Ark. 690, 276 S. W. 1012), in Fort Smith Light & Traction Co. v. Board of Improvement of Paving District, supra, 274 U. S. 387, 389, 390, 47 S. Ct. 595, 71 L. Ed. 1112, held that a street railway company, by virtue of a permit under Act No. 571 of the Acts of Arkansas 1919, acquired no contractual right to be exempted from paving costs imposed by subsequent legislation, and further held that, even if it did acquire such right, section 6, article 12 of the Constitution of Arkansas reserved to the General Assembly the power to alter the contract. The constitutional provision (article 12, § 6, Constitution of Arkansas) reads as follows: "Corporations may be formed under general laws, which laws may, from time to time, be altered or repealed. The General Assembly shall have the power to alter, revoke, or annul any charter of incorporation now existing and revocable at the adoption of this Constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of this State, in such manner, however, that no injustice shall be done to the corporators."

It is contended in this case that the repeal of section 13 of Act No. 571, Acts of

Arkansas 1919, would be altering the appellee's franchise in such a manner as to be injurious to its "corporators." Three justices of the Supreme Court of the United States, in Frost v. Corporation Commission of Oklahoma, supra, 278 U. S. 515, 49 S. Ct. 235, 73 L. Ed. 483, were of the opinion that a similar provision of the Oklahoma Constitution would permit such repeal. The change considered in the Fort Smith Case, 274 U. S. 387, 47 S. Ct. 595, 71 L. Ed. 1112, imposed a severe hardship upon the utility, but was held to be authorized. The Supreme Court of Arkansas in that case, 169 Ark. 690, on page 694, 276 S. W. 1012, 1013, says: "In discussing the exercise of this reserved power, other courts have said that alterations in the charters must be reasonable; that they must be made in good faith; that they must be consistent with the scope and object of the act of incorporation; and that such burdens must not be imposed through oppression or wrong. We have examined the record carefully, and do not think that the burdens imposed by said Act No. 680, Acts of 1923, are unreasonable, or that they were imposed in bad faith, or through oppression and wrong. The burden laid by this act was just such a burden as the franchises imposed under which appellant operated, and with which it had complied before it surrendered them and accepted the indeterminate permit."

It must be remembered that the repeal of section 13 of Act No. 571, Acts of Arkansas 1919, was not directed at the appellee's franchise alone. The repealing act [Act No. 124 of 1921] was general legislation affecting all such utilities and all municipalities. The effect of it was to place the appellee's predecessor in no worse a position than it had been in four days prior to the repeal, when it applied for the indeterminate permit.

Mr. Justice Holmes, in Madera Waterworks v. Madera, supra, 228 U. S. 454, 456. 33 S. Ct. 571, 57 L. Ed. 915, says: "An appeal to the 14th Amendment to protect property from a congenital defect must be vain."

Because Act No. 571 did not clearly and expressly make the conditional immunity provided by section 13 thereof a permanent part of appellee's indeterminate permit, and because of the reserved power of the General Assembly of Arkansas under the State Constitution, we think there were congenital defects in appellee's asserted contract with the state which are fatal to its claims in this suit.

The decree is reversed, and the case remanded, with directions to dismiss the bill.