Herbert BREWER; Amis Guthridge; White America, Inc., a Corporation Organized and Operating Under the Laws of the State of Arkansas; "Citizens Committee Representing Segregation in the Hoxie Schools," an Unincorporated Association; James D. Johnson; Curt Copeland; and "White Citizens Council of Arkansas," an Unincorporated Association, Appellants,

v.

HOXIE SCHOOL DISTRICT NO. 46 OF LAWRENCE COUNTY, ARKANSAS, a Body Corporate Under the Laws of the State of Arkansas; L. R. Howell; L. L. Cochran; Howard Vance; Guy Floyd; and Leo Robert, Individually and as Directors of Hoxie School District No. 46 of Lawrence County, Arkansas; and K. E. Vance, Appellees.

No. 15510.

United States Court of Appeals
Eighth Circuit.

Oct. 25, 1956.

M. V. Moody, Little Rock, Ark., and James D. Johnson, Crossett, Ark., submitted brief for appellants.

Eugene Cook, Atty. Gen., of Georgia, and E. Freeman Leverett, Asst. Atty. Gen., of Georgia, submitted brief on behalf of Eugene Cook, as Atty. Gen. of Georgia, amicus curiae.

Bill Penix, Jonesboro, Ark. (James F. Sloan, III, Walnut Ridge, Ark., Edwin E. Dunaway, Little Rock, Ark., and Roy Penix, Jonesboro, Ark., were with him on the brief), for appellees.

Henry Putzel, Jr., Atty., Dept. of Justice, Washington, D. C. (Warren Olney, III, Asst. Atty. Gen., Arthur B. Caldwell, and Hubert H. Margolies, Attys., Dept. of Justice, Washington, D. C., were with him on the brief), for United States as amicus curiae.

Before WOODROUGH, VOGEL and VAN OOSTERHOUT, Circuit Judges.

WOODROUGH, Circuit Judge.

Prior to 1955, the public schools in Hoxie School District No. 46 of Lawrence County, Arkansas, servicing about a thousand white students and twenty four negroes, were operated in accord with the laws of the State prescribing segregation of the white and colored pupils, but on June 5, 1955, following the two decisions of the Supreme Court of the United States in Brown v. Board of Education of Topeka, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 [May 17, 1954] and 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083 [May 31, 1955], the school board of directors determined that as the Fourteenth Amendment to the United States Constitution, interpreted in those decisions, invalidated all state laws imposing segregated public education, the Board was required to desegregate the schools within their jurisdiction as soon as all administrative obstacles could be removed. The Board further determined that under Article VI, Clause 3 of the United States Constitution requiring state officers to bind themselves by oath to support the Constitution which by Article VI, Clause 2 is the supreme law of the land, they had the right and duty to change to a nondiscriminatory system without awaiting repeal of the Arkansas segregation statutes.

On June 25, 1955, the Board determined that all legally cognizable obstacles to desegregation had been removed, and resolved to desegregate the schools within its jurisdiction, and on July 11, 1955, the schools were opened without segregation. Such operation of them was effective for several weeks with satisfactory reaction from pupils and the local community, but thereafter attempts to obstruct and prevent the operation of the schools on the integrated basis were systematically planned and set on foot, and the present action was brought by the School District, the members of the School Board and the School Superintendent in the federal district court in Arkansas to obtain restraining order and injunction against such obstruction.[1]

The defendants named in the complaint are individuals and organizations alleged to have entered into and carried on a conspiracy to obstruct the school board from securing the equal protection of the laws in the operation of the public schools to all persons within the district. It was alleged that defendants in furtherance of their conspiracy claimed and asserted that Arkansas laws required a continuation of segregation and that plaintiff's resolution to desegregate the schools was illegal. That defendants committed numerous acts of trespass upon the school property and acts of annoying, threatening, and intimidating the individual plaintiffs, and made inflammatory speeches at mass meetings condoning physical violence and calling for mass action in resistance to desegregation, and to the same end made threats to boycott the schools and to sub-

1. Declaratory judgment was also prayed for but was not awarded and no issue is here preserved in respect to it.

ject the members of the school board to endless, expensive litigation, and attempted by fear and persuasion to deter the children from attendance at schools of the district. The acts of defendants caused discontinuance of a school session, reduction of school attendance resulting in immediate loss of annual revenue to the school district, and restoration of segregation demanded by defendants would cost an immediate additional expenditure. That the matter in controversy exceeded, exclusive of interest and costs, the sum of $3,000, and that plaintiffs would suffer irreparable injury unless granted injunctive relief.

The plaintiffs asserted jurisdiction in the federal court under Title 28 U.S.C.A. § 1331, and that the action arose under Article VI, Clauses 2 and 3 of the Constitution of the United States; the Fourteenth Amendment to the Constitution of the United States, and Article IV, Section 4 of the Constitution. Jurisdiction was also invoked pursuant to Title 28 U.S.C.A. § 1343 with further allegation that the action also arose under Title 42 U.S.C.A. §§ 1983, 1985(2), and 1988, and under Title 18 U.S.C.A. §§ 241 and 242.

A temporary restraining order was issued by Judge Trimble, presiding in the district court, on presentation of the verified complaint supported by affidavits, and thereafter hearing was had on a motion by defendants to dismiss. Judge Trimble denied the motion and accompanied the ruling with written opinion, 135 F.Supp. 296. Thereafter, issues having been joined, plenary trial was had in the district court on the merits before Judge Reeves [assigned] and judgment was rendered against the defendants and all persons acting in concert with them enjoining them from

"interfering by acts of trespass, boycott or picketing with the free operation of schools within plaintiff's jurisdiction; from in any manner deterring the attendance at school of children within said school district and from in any manner

threatening or intimidating the individual plaintiffs; from taking any acts of any kind whatsoever which seek to compel by force, intimidation, threats or violence a rescission of the orders heretofore made integrating the public schools of Hoxie."

The judgment was based on meticulously detailed and complete findings of fact which are reported along with the opinion of Judge Reeves at 137 F.Supp. 364.

All of the defendants in the action have joined in this appeal to obtain a reversal of the judgment. They do not assign any specified finding of fact of the trial court as clearly erroneous, though in their statement of the facts set forth in the brief, some differences from the findings are observed.

They contend for reversal that the federal court was without jurisdiction of the action; that the complaint failed to state facts sufficient to constitute a cause of action; that the evidence was insufficient; and that the injunction granted is violative of the First Amendment of the Constitution in that it abridges freedom of speech and denies the right peaceably to assemble and petition.

The Attorney General of the State of Georgia has filed a brief under leave of the court as amicus curiae seeking reversal of the judgment in accord with the brief of appellants, and the United States, asserting that the issues presented in the case have a nation-wide impact, has filed a brief, with leave of the court, as amicus curiae advocating affirmance of the judgment in accord with the brief of appellees.

In view of the publication in the Federal Supplement of the facts as found by the District Court, we do not repeat them here but refer to the publication. We have carefully compared the findings with the evidence and conclude that each of the findings is supported by substantial evidence and none is clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C.A.

■ Turning first to the question of federal jurisdiction, it is the position of the appellees that federal jurisdiction of the case exists under the general provision of the federal law, in that the complaint presents a civil action arising under the Constitution and laws of the United States wherein the amount in controversy exceeds $3,000, 28 U.S.C.A. § 1331,[2] and it arises under the Supremacy Clause of the Constitution[3] implementing the Fourteenth Amendment, and the corollary or related constitutional provision imposing an oath or affirmation upon state officers to support the Constitution.[4]

Appellees contend that as they are under a constitutional duty to support and obey the Fourteenth Amendment and to accord equal protection of the law in their operation of schools, they have a federal right to be free from wrongful interference with the performance of that duty. They say they rest their claim of a federal constitutional right squarely on the fundamental and pervasive provisions of the Constitution and statutes, and declare that the nubbin of their case against defendants in the federal court is the jurisdiction which stems from the Fourteenth Amendment in conjunction with the Supremacy Clause of the Constitution and the cause of action under section 1331 to which they give rise. That the right of the members of the school board to be free from interference with their performance of a duty which the Constitution itself imposes on them derives directly from the Supremacy Clause and the related constitutional provision imposing upon the state

officers an oath or affirmation to support the constitution and it is a federal right. The school board is attempting to obey and apply the federal law laid down by the Supreme Court in the Brown case and the defendants attempt and threaten to subvert and prevent it.

Both of the learned and experienced district judges who rendered decision in the case reached the conclusion that the complaint disclosed that federal jurisdiction existed under the provisions of the general law relied on as above stated, and we are in accord with that conclusion.

Although the defendants contended below and reassert here that the acts complained of against them were acts upon which a suit could have been predicated in the state court and that the acts were of state and not federal cognizance, the complaint was not so drawn. The conspiracy it alleges is a conspiracy to violate a federal right, and recourse to the federal court for its vindication will not be denied merely because a cause of action might likewise exist in the state court. United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588; United States v. Waddell, 112 U.S. 76, 5 S.Ct. 35, 28 L.Ed. 673; Romero v. Weakley, 9 Cir., 226 F.2d 399; Dyer v. Kazuhisa Abe, D. C. Hawaii, 138 F.Supp. 220.

■ Whether or not the controversy arises under federal law must be determined by the allegations of the complaint and they were obviously drawn to make the alleged violations of the federal law the basis of the suit.

---

2. "The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $3,000, exclusive of interest and costs, and arises under the Constitution, laws or treaties of the United States." The court below found that the amount in controversy exceeded $3,000.

3. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the

Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." Constitution, Art. VI, Cl. 2.

4. " * * * All executive and judicial Officers, both of the United States and of the several States, shall be bound by Oath or Affirmation, to support this Constitution; * * *." Constitution, Art. VI, Cl. 3.

The traditional test for deciding when a case arises under the Constitution or laws of the United States are set forth in the leading case of Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 97, 81 L.Ed. 70, where the Court stated:

"How and when a case arises 'under the Constitution or laws of the United States' has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. Starin v. [City of] New York, 115 U.S. 248, 257, 6 S.Ct. 28, 29 L.Ed. 388; First National Bank [of Canton, Pa.] v. Williams, 252 U.S. 504, 512, 40 S.Ct. 372, 374, 64 L.Ed. 690. The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. Ibid; King County [Wash.] v. Seattle School District, 263 U.S. 361, 363, 364, 44 S.Ct. 127, 128, 68 L.Ed. 339. A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto ([City of] New Orleans v. Benjamin, 153 U.S. 411, 424, 14 S.Ct. 905, 38 L.Ed. 764; Defiance Water Co. v. [City of] Defiance, 191 U.S. 184, 191, 24 S.Ct. 63, 48 L.Ed. 140; Joy v. [City of] St. Louis, 201 U.S. 332, 26 S.Ct. 478, 50 L.Ed. 776; City and County of Denver v. New York Trust Co., 229 U.S. 123, 133, 33 S.Ct. 657, 57 L.Ed. 1101), and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. ([State of] Tennessee v. Union & Planter's Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; Louisville & Nashville R. Co., v. Mottley, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126; The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 57 L.Ed. 716; Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218). Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense. Devine v. [City of] Los Angeles, 202 U.S. 313, 334, 26 S.Ct. 652, 50 L.Ed. 1046; The Fair v. Kohler Die & Specialty Co., supra."

In Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, the plaintiff brought suit in the federal court against FBI agents for alleged illegal search and seizure and false imprisonment. Federal jurisdiction was invoked on the ground that they had abridged rights guaranteed to the plaintiff by the Constitution. The action was dismissed for lack of jurisdiction. The Supreme Court reversed, stating that since the right of the plaintiff to recover was based on a substantial question of the scope of the Fourth and Fifth Amendments, the case arose under the Constitution. The defendants there had urged that the complaint stated a cause of action for the common law tort of trespass made actionable by state law and that it therefore did not raise questions "arising under [the] Constitution or laws of [the] United States." 9 Cir., 150 F.2d 96, 97. To support that contention they maintained that the plaintiffs could not recover under the Constitution or laws of the United States, since the Constitution does not expressly provide for recovery in money damages for violations of the Fourth and Fifth Amendments and Congress has not enacted a statute so providing. The Court held, however, that a mere reading of the complaint refuted the first contention and that the second contention was not decisive on the question of jurisdiction, saying, 327 U.S. at pages 681–682, 66 S.Ct. at page 775:

"Whether or not the complaint as drafted states a common law action in trespass made actionable by state law, it is clear from the way it was drawn that petitioners seek recovery squarely on the ground

that respondents violated the Fourth and Fifth Amendments. It charges that the respondents conspired to do acts prohibited by these amendments and alleges that respondents' conduct pursuant to the conspiracy resulted in damages in excess of $3,000. It cannot be doubted therefore that it was the pleaders' purpose to make violation of these Constitutional provisions the basis of this suit. Before deciding that there is no jurisdiction, the district court must look to the way the complaint is drawn to see if it is drawn so as to claim a right to recover under the Constitution and laws of the United States. For to that extent 'the party who brings a suit is master to decide what law he will rely upon and * * * does determine whether he will bring a "suit arising under" the * * * [Constitution or laws] of the United States by his declaration or bill.' The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S. Ct. 410, 411, 57 L.Ed. 716. Though the mere failure to set out the federal or Constitutional claims as specifically as petitioners have done would not always be conclusive against the party bringing the suit, where the complaint, as here, is so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court, but for two possible exceptions later noted, must entertain the suit. Thus allegations far less specific than the ones in the complaint before us have been held adequate to show that the matter in controversy arose under the Constitution of the United States. Wiley v. Sinkler, 179 U.S. 58, 64–65, 21 S.Ct. 17, 20, 45 L.Ed. 84; Swafford v. Templeton, 185 U.S. 487, 491–492, 22 S.Ct. 783, 784, 785, 46 L.Ed. 1005. The reason for this is that the court must assume jurisdiction to decide whether the allegations state a cause of action on which the court can grant relief as well as to determine issues of fact arising in the controversy."

The Court then went on to say, 327 U.S. at page 682, 66 S.Ct. at page 776:

"Jurisdiction, therefore, is not defeated as respondents seem to contend, by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover. For it is well settled that the failure to state a proper cause of action calls for a judgment on the merits and not for a dismissal for want of jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction. Swafford v. Templeton, 185 U.S. 487, 493, 494, 22 S.Ct. 783, 785, 786, 46 L.Ed. 1005; Binderup v. Pathe Exchange, 263 U.S. 291, 305–308, 44 S.Ct. 96, 98–99, 68 L.Ed. 308. The previously carved out exceptions are that a suit may sometimes be dismissed for want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous. The accuracy of calling these dismissals jurisdictional has been questioned. The Fair v. Kohler Die & Specialty Co., supra, 228 U.S. at page 25, 33 S.Ct. at page 411, 57 L.Ed. 716. But cf. Swafford v. Templeton, supra."

A recent application of the doctrine, closely akin to that of Bell v. Hood, but involving a statutory rather than a Constitutional claim occurs in the case of

Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, at page 249, 71 S.Ct. 692 at page 694, 95 L.Ed. 912, where the Court stated:

"As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action. The Judicial Code, in vesting jurisdiction in the District Courts, does not create causes of action, but only confers jurisdiction to adjudicate those arising from other sources which satisfy its limiting provisions. Petitioner asserted a cause of action under the Power Act. To determine whether that claim is well founded the District Court must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative. If the complaint raises a federal question, the mere claim confers power to decide that it has no merit as well as to decide that it has. In the words of Mr. Justice Holmes, '* * * if the plaintiff really makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad.' The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S. Ct. 410, 412, 57 L.Ed. 716. See also Hurn v. Oursler, 289 U.S. 238, 240, 53 S.Ct. 586, 587, 77 L.Ed. 1148. Even a patently frivolous complaint might be sufficient to confer power to make a final decision that it is of that nature, binding as res judicata on the parties."

See, also, American Federation of Labor v. Watson, 327 U.S. 582, 591, 66 S.Ct. 761, 90 L.Ed. 873.

The allegations of the complaint clearly established jurisdiction of the subject matter and the remedy in the federal court.

As to the Issuance of Injunction.

■■■ The remedy prayed for was injunction and jurisdiction of the federal courts to issue injunction to protect rights safeguarded by the Constitution is well established. See Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570; Hays v. Port of Seattle, 251 U.S. 233, 40 S.Ct. 125, 64 L.Ed. 243; Pennoyer v. McConnaughy, 140 U.S. 1, 11 S.Ct. 699, 35 L.Ed. 363; City Railway Co. v. Citizens' St. Railroad Co., 166 U.S. 557, 17 S.Ct. 653, 41 L.Ed. 1114; City of Mitchell v. Dakota Cent. Telephone Co., 246 U.S. 396, 407, 38 S.Ct. 362, 62 L.Ed. 793; and Bell v. Hood, supra, 327 U.S. at page 684, 66 S.Ct. at page 777, "* */ * where federally protected rights have been invaded, it has been the rule from the beginning that courts will be alert to adjust their remedies so as to grant the necessary relief. And it is also well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." An injunction will issue wherever necessary "to afford adequate protection of constitutional rights", Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322. Federal courts have the power to afford all remedies necessary to the vindication of federal substantive rights defined in statutory and constitutional provisions except where Congress has explicitly indicated that such remedy is not available.

Plaintiffs Federal Right.

■■ The plaintiffs being bound by constitutionally imposed duty and their oaths of office [5] to support the Fourteenth Amendment and to accord equal

5. Ark.Stats., 1947, Sec. 80–505 "*Oath of office.* Each school director elected or appointed shall, within ten (10) days after receiving notice of his election or appointment subscribe to the following oath:

"I, ....................., do hereby solemnly swear or affirm, that I will support the Constitution of the United States and the Constitution of the State of Arkansas, * * *."

protection of the laws to all persons in their operation of the Hoxie schools must be deemed to have a right, which is a federal right, to be free from direct interference in the performance of that duty. In Brown v. Board of Education of Topeka and the companion cases, supra, the Supreme Court held that segregated public education is a denial of the equal protection of the laws. A state granting public education must do so on an equal basis without racial distinction. Separation of the races in a public education system is discriminatory. In the field of public education, the doctrine of separate but equal has no place. Because of the wide applicability of the decision and the great variety of local conditions, the Court deferred formulation of the decrees in the Brown case, emphasizing merely that "We have now announced that such segregation is a denial of the equal protection of the laws."

When, after additional argument, the Supreme Court issued its decrees in those cases, it stated at the outset, 349 U.S. 294, at page 298, 75 S.Ct. 753, at page 755:

> "These cases were decided on May 17, 1954. The opinions of that date, declaring the fundamental principal that racial discrimination in public education is unconstitutional, are incorporated herein by reference. All provisions of federal, state, or local laws requiring or permitting such discrimination must yield to this principle."

The Court also stated, 349 U.S. at page 299, 75 S.Ct. at page 756:

> "Full implementation of these constitutional principles may require solution of varied local school problems. School authorities have the primary responsibility for elucidating, assessing, and solving these problems; courts will have to consider whether the action of school authorities constitutes good faith implementation of the governing constitutional principles."

The principles enunciated by the Supreme Court in the School Segregation Cases are binding upon plaintiffs in this case, as well as on all other school boards or school officials administering public education programs. For in practical effect, the rights and duties of not only the immediate parties to the cases before the Supreme Court were at issue but also the rights and duties of all others similarly situated. See 347 U.S. at page 495, 74 S.Ct. at page 692.

Plaintiffs are under a duty to obey the Constitution. Const.Art. VI, cl. 2. They are bound by oath or affirmation to support it and are mindful of their obligation. It follows as a necessary corollary that they have a federal right to be free from direct and deliberate interference with the performance of the constitutionally imposed duty. The right arises by necessary implication from the imposition of the duty as clearly as though it had been specifically stated in the Constitution. In many cases the implied rights which have been upheld by the courts have been of far less importance than the right against being interfered with in obeying the Constitution which is here involved. Included among such implied rights are the following: The right to be protected against violence while in the lawful custody of a federal officer (Logan v. United States, 144 U.S. 263, 294, 12 S. Ct. 617, 626, 36 L.Ed. 429—a right which the Court stated "does not depend upon any of the amendments to the constitution, but arises out of the creation and establishment by the constitution itself of a national government, paramount and supreme within its sphere of action"); the right to inform a federal officer of a violation of the laws, In re Quarles, 158 U.S. 532, 536, 15 S.Ct. 959, 39 L.Ed. 1080; see also Motes v. United States, 178 U.S. 458, 462–463, 20 S.Ct. 993, 44 L.Ed. 1150; Nicholson v. United States, 8 Cir., 79 F.2d 387; Hawkins v. United States, 5 Cir., 293 F. 586; the right of the people peaceably to assemble for the purpose of petitioning Congress for a redress of grievances or for any-

thing else connected with the powers and duties of the national government (United States v. Cruikshank, 92 U.S. 542, 23 L.Ed. 588, which the Court held (92 U.S. at page 552) was implied by the very idea of a government, republican in form; see also Powe v. United States, 5 Cir., 109 F.2d 147, 151, certiorari denied, 309 U.S. 679, 60 S.Ct. 717, 84 L.Ed. 1023); the right to vote in federal elections, Ex parte Yarbrough, 110 U.S. 651, 4 S.Ct. 152, 28 L.Ed. 274; the right of a voter in a federal election to have his ballot counted fairly, United States v. Mosley, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355; United States v. Classic, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368; and United States v. Saylor, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341; the right to furnish military supplies to the federal government for defense purposes, Anderson v. United States, 9 Cir., 269 F. 65, certiorari denied, 255 U.S. 576, 41 S.Ct. 447, 65 L.Ed. 794; the right of a witness to be protected in giving testimony before a federal tribunal, Foss v. United States, 9 Cir., 266 F. 881; the right to enforce a decree of a federal court by contempt proceedings, United States v. Lancaster, C.C.W.D.Ga., 44 F. 885 and 896, 10 L.R.A. 333; and the right to hold federal office, McDonald v. United States, 8 Cir., 9 F.2d 506; see also United States v. Patrick, C.C.M. D.Tenn., 54 F. 338. See, generally, United States v. Moore, C.C.N.D.Ala., 129 F. 630, 632–633.

Threatened abridgment of the rights which the courts held existed by implication in the Constitution actually supported criminal prosecutions in most of the foregoing cases, and not merely, as here, the relatively mild restraint of the injunctive process.

■ The existence of a Constitutional duty presupposes a correlative Constitutional right in the person for whom the duty is to be exercised. Thus in Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429, the Supreme Court upheld what is now Title 18, United States Code, Section 241, as the basis for conviction of three men charged with mob violence against prisoners in the custody of a United States Marshal. The Court held that the prisoners, who were awaiting trial for an offense against the United States, had a federal right to be protected in their persons while in federal custody. The Court said, 144 U.S. at page 284, 12 S.Ct. at page 623, that the existence of the duty on the part of the government to protect its prisoners "implies a corresponding right of the prisoners to. be so protected". Cf. U. S. v. Cruikshank, 25 Fed. Cas. pages 707, 709, No. 14,897, affirmed 92 U.S. 542, 23 L.Ed. 588.

It is no less true, of course, that the existence of a Constitutional duty also presupposes a correlative right in the person upon whom the duty is imposed to be free from direct interference with its performance. In Tennessee v. Davis, 100 U.S. 257, 264, 25 L.Ed. 648 in which trial of a federal officer for an act performed in the line of duty was held removable from a state to a federal court, the Supreme Court quoted Chief Justice Marshall in Osborn v. Bank of United States, 9 Wheat. 738, 6 L.Ed. 204, as follows:

"It is not unusual for a legislative act to involve consequences which are not expressed. An officer, for example, is ordered to arrest an individual. It is not necessary, nor is it usual, to say that he shall not be punished for obeying this order. His security is implied in the order itself. It is no unusual thing for an act of Congress to imply, without expressing, this very exemption from State control * * * The collectors of the revenue, the carriers of the mail, the mint establishment, and all those institutions which are public in their nature, are examples in point. It has never been doubted that all who are employed in them are protected while in the line of their duty; and yet this protection is not expressed in any act of Congress. It is incidental to, and is implied in, the several acts by which those institutions are cre-

ated; and is secured to the individuals employed in them by the judicial power alone; that is, the judicial power is the instrument employed by the government in administering this security."

See also, In re Neagle, 135 U.S. 1, 69, 10 S.Ct. 658, 34 L.Ed. 55 and the expressions of Judge Thomas Jones in the related cases of Ex parte Riggins, C.C.N.D.Ala., 134 F. 404, and United States v. Powell, C.C.N.D.Ala., 151 F. 648.

In the case of In re Coy, 127 U.S. 731, 8 S.Ct. 1263, 32 L.Ed. 274, the Court upheld convictions of private persons and state election inspectors who interfered with the duty of the election officials to safeguard election documents used in an election at which federal and state officers were elected. One part of the indictment, which was upheld by the Court alleged a conspiracy.

"* * * to interfere with the officers of the election in the discharge of their duties; that they did by unlawful means induce them to violate and refuse to comply with their duty in regard to the custody and safe-keeping of the election returns, and that they persuaded and induced these officers, or attempted so to do, to omit their duty in regard thereto." 127 U.S. at page 750, 8 S.Ct. at page 1268.

Ex parte Siebold, 100 U.S. 371, 25 L. Ed. 717, involved a somewhat similar situation. In that case the Court upheld the conviction of state election officials for fraudulent conduct in violation of state law in an election where federal and state officers were involved. The Court said, 100 U.S. at page 387:

"* * * While the state will retain the power of enforcing such of its own regulations as are not superseded by those adopted by Congress, it cannot be disputed that if Congress has power to make regulations it must have the power to enforce them, not only by punishing the delinquency of officers appointed

by the United States, but by restraining and punishing those who attempt to interfere with them in the performance of their duties; * * * *"

In the case at bar we think there is no question that plaintiff school board members may be protected by a federal injunction in their efforts to discharge their duty under the Fourteenth Amendment.

In Levin v. U. S., 8 Cir., 128 F. 826, the appellant from a conviction in federal court had aided aliens not entitled to naturalization to obtain certificates of citizenship from a Missouri state court, and the point was made in this court that it was for the states to prescribe the duties of their courts, that such courts were not bound to exercise federally imposed powers, and that appellant's fraud upon that court was not of federal cognizance. But in an opinion by Judge Walter Sanborn, it was pointed out for this court that when the United States offered admission to the Union to the people of Missouri, it was upon condition that the Constitution should become the supreme law of the state, binding alike on all its inhabitants. Congress empowered the state court to issue citizenship certificates and the appellant's interference by fraud with performance of that function was properly made a federal offense and was punished in the federal court. This court cited many other instances where the action of the state judges and courts is controlled, as is the conduct of the school board in this case, by federal law. In that regard the decision of the Supreme Court in the recent case of Testa v. Katt, 330 U.S. 386, 67 S.Ct. 810, 91 L.Ed. 967, forcibly recalls that the federal laws are the supreme laws of the land, binding alike upon the courts and the people, and that duties imposed by Congress, even upon state courts, become obligatory. We think the necessary implication is that federal courts may be invoked to prevent conspiracy to interfere with performance of such duties.

### The Merits.

The facts as found by the district court show that defendants acted as they did for the purpose of preventing the plaintiff board from continuing to operate desegregated schools. It was found by the court, for example, that defendants' conduct at the August 3, 1955, meeting "revealed a concert of action and a general agreement on their part to compel, by force and intimidation, a rescission of the order of the Board of Directors in integrating the races in the schools. * * * The words used, and the very nature of the speeches, would have and did have the effect, not only to encourage violence but to intimidate those who are charged with the responsibility of integrating the races * * *." "Following the first mass meeting and in between and after the others, the defendants, both in meetings with members of the Board of Directors and the individual members thereof, and by telephone calls, and by threats to throw a picket line about the schools, and by acts of terrorism so far as the Superintendent of Schools was concerned, so intimidated the parents and patrons of the schools, as well as the Board of Directors and Superintendent, as to force a suspension of school activities." These and other facts found by the court warranted, among others, the conclusions of law that "the defendants, having acted in concert for the common purpose of compelling a rescission of the integration order of the Board of Directors of Hoxie School District No. 46, were conspirators, and the acts of each conspirator were binding upon all the others." And "All the defendants in this case had joined in the common conspiracy, from which none of the defendants has to date withdrawn, for the express purpose of forcing the plaintiffs to return to segregation in the Hoxie schools. To effect this conspiracy the defendants have resorted to threats, violence, and intimidations against plaintiffs and those who uphold their actions. Defendants seek to prevent plaintiffs from exercising their civil right to secure equal protection of the laws to all citizens within the school district. Defendants have challenged the legality of the action of plaintiffs in establishing integrated schools."

The conduct of the defendants briefly described above was not in the nature of merely private tortious action; it was action directed to prevent the plaintiff school board members from carrying out their duty as state officials to put into effect a desegregation program in public schools. It was deliberately aimed at preventing the school board from affording to all the children within the school district the equal protection of the laws. The findings that the conduct of the defendants caused damages and, unless restrained, would result in irreparable injury for which there was no adequate remedy at law were supported.

### As to the First Amendment.

The terms of the injunction that was issued in this case did not go beyond preventing a continuation of the acts defendants were engaging in and the kind of speech in which they indulged as fully set forth in the findings of the court appearing in 137 F.Supp. 364, 368 to 374. Those acts and that type of speech were calculated and intended, at the times and under the circumstances in which they were made, to incite disobedience of the law and the overthrow of law and order and to coerce, intimidate, and compel the school board to cease and desist from the performance of its sworn and lawful duty, and to engage in unlawful conduct. They present no legitimate issue of free speech or assembly. We think the injunction in the form in which it was issued is justified under the decisions of the Supreme Court in Cantwell v. State of Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213; Feiner v. People of State of New York, 340 U.S. 315, 71 S. Ct. 303, 95 L.Ed. 267; Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 69 S.Ct. 684, 93 L.Ed. 834; Chaplinsky v. State of New Hampshire, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031.

Civil Rights Acts.

Being convinced that the complaint in this case sufficiently presented a civil action wherein the matter in controversy exceeds the sum of $3,000, exclusive of interest and costs, which arose under the Constitution and laws of the United States, and that a case for injunction was stated and proved, and that a proper order of injunction was entered, affirmance of the judgment appealed from should follow upon the considerations already stated. But it is contended for plaintiffs, and Judge Reeves decided, that federal jurisdiction of the case is supported on grounds additional to those we have discussed. The issues here are not "purely local", but have "nationwide impact" and we deem it important that nothing herein be taken to detract from the federal power in respect to enforcement of the Fourteenth Amendment. We have therefore considered the "additional grounds."

▉▉▉ Plaintiffs specifically call attention to 42 U.S.C.A. § 1985(3) which in pertinent part reads as follows:

"§ 1985. Conspiracy to interfere with civil rights * * *

"Depriving persons of rights or privileges

"(3) If two or more persons in any State or Territory conspire * * * for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; * * * in any case of conspiracy set forth in this section, if one or more persons engaged therein do * * * any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

The contention for plaintiffs is that this statute manifests a broad legislative purpose by Congress to meet the prescribed conduct at which it is aimed. It does not expressly accord the school district here a right to injunctive relief against the defendants' conspiracy to hinder the district's operation of desegregated schools. The specific grant is of a right of action for recovery of damages occasioned by acts done in furtherance of such conspiracy.

In support of the conclusion that the statute affords a standard to federal equity courts in respect to such conduct and a sufficient basis upon which the courts should enjoin a conspiracy made actionable by the section, counsel refer us to 28 U.S.C.A. § 1651, providing that the federal courts may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law, and to the following cases; Collins v. Hardyman, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253; Fitzgerald v. Pan American World Airways, 2 Cir., 229 F.2d 499; Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691; Roosevelt Field v. Town of North Hempstead, D.C.N.Y., 84 F.Supp. 456; Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083; Bell v. Hood, 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939; Slifka v. Johnson, 2 Cir., 161 F.2d 467; Van Beeck v. Sabine Towing Co., 300 U.S. 342, 57 S.Ct. 452, 81 L.Ed. 685; Gooch v. Oregon Short Line R. Co., 258 U.S. 22, 42 S.Ct. 192, 66 L.Ed. 443; Johnson v. U. S., 1 Cir., 163 F. 30, 18 L.R.A.,N.S., 1194; Keifer & Keifer v. R. F. C., 306 U.S. 381, 59 S.Ct. 516, 83 L.Ed. 784; United States v. Hutcheson, 312 U.S. 219, 61 S.Ct. 463, 85 L.Ed. 788; South & Central American Commercial Co. v. Panama R. Co., 237 N.Y. 287, 142 N.E. 666; The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075; Warner v. Goltra, 293 U. S. 155, 55 S.Ct. 46, 79 L.Ed. 254.

We conclude from consideration of the cases that Judge Reeves was not in er-

**104**

ror in recognizing the quoted section as affording additional support to the federal jurisdiction and the issuance of the injunction.

Plaintiffs also contended before Judge Reeves and repeat here that the identity of interest between the school board and the school children is sufficiently close so as to permit the school board to assert the rights of the school children under the Fourteenth Amendment in a federal equitable proceeding to restrain the illegal conduct. Action taken by private individuals against a school board to prevent it from according equal protection of the laws to the school children would result in a deprivation of the school childrens' rights under the Fourteenth Amendment. Judge Reeves sustained the contention to the extent of declaring [137 F.Supp. 367]: "If the defendants in fact conspired to deprive (among others) Negro pupils of their Constitutional rights, then it would seem proper for the plaintiffs, so closely related as they were to the victims in this case, to bring a restraining suit."

This aspect of the case compels consideration at the outset of the numerous cases cited by the defendants in which it has been settled that the Fourteenth Amendment applies only to state action. As the principle was stated by this court in Love v. Chandler, 8 Cir., 124 F.2d 785, 786, approved by the Supreme Court in Collins v. Hardyman, 341 U.S. 651, 71 S. Ct. 937, 95 L.Ed. 1253, "The statutes [civil rights acts] while they granted protection to persons from conspiracies to deprive them of the rights secured by the Constitution and laws of the United States * * * did not have the effect of taking into federal control the protection of private rights against invasion by individuals."

But the appellees, fully recognizing that principle, argue that the realities in this case are that the school board is in loco parentis of the children whose rights are at stake and if defendants' illegal conduct succeeds in coercing the school board to rescind its desegregation order, such rescission can be accomplished only through "state action."

The school board having the duty to afford the children the equal protection of the law has the correlative right, as has been pointed out, to protection in performance of its function. Its right is thus intimately identified with the right of the children themselves. The right does not arise solely from the interest of the parties concerned, but from the necessity of the government itself. Cf. Ex parte Yarbrough, 110 U.S. 651, 662, 4 S.Ct. 152, 28 L.Ed. 274. Though, generally speaking, the right to equal protection is a personal right of individuals, this is "only a rule of practice", Barrows v. Jackson, 346 U.S. 249, 257, 73 S.Ct. 1031, 1035, 97 L.Ed. 1586, which will not be followed where the identity of interest between the party asserting the right and the party in whose favor the right directly exists is sufficiently close.

Thus in Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L. Ed. 1070, private schools were held to have such an interest in possible patrons as to permit them to question the validity of a statute regulating the right of parents to control the education of their children. No parent to whom the statute applied was before the court. And in Barrows v. Jackson, supra, the Supreme Court refused to permit enforcement of a claim for damages for breach of a restrictive covenant against one who had conveyed land to a non-Caucasian in violation of his contract. Though the constitutional right of no ascertainable individual would have been infringed by enforcement of the claim, the Court held that enforcement would deny equal protection of the laws to "particular non-Caucasian would-be users", 346 U.S. loc. cit. 260, 73 S.Ct. loc. cit. 1037, and that the defendant had standing to raise the defense that judicial enforcement of the covenant directed against non-Caucasians violated the Equal Protection Clause of the Fourteenth Amendment, even though the defendant himself was not a member of the racial group discriminated against under the covenant.

In Buchanan v. Warley, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149, the vendor in

a contract for the sale of real property was allowed to contest the validity of an ordinance limiting the vendee's use thereof where the vendee's promise was conditioned on being permitted to use the property in a manner prohibited by the ordinance. In Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L.Ed. 131, an employee was held to have such an interest in the freedom of his employer to exercise his judgment in matters of employment without illegal interference or compulsion as to be able to question the constitutionality of a statute regulating employers whose enforcement would force the discharge of the employee even under a contract terminable at will. And in Columbia Broadcasting System v. United States, 316 U.S. 407, 422–423, 62 S.Ct. 1194, 86 L.Ed. 1563, the Federal Communications Act, 47 U.S.C.A. § 151 et seq., was interpreted to give plaintiff standing to assert a third party's rights under the Act.

These principles have relevance to the case at bar, where the appellants sought by resorting to compulsion against the school board to deprive the children of their right to equal protection of the laws at its hands. Judge Reeves concluded that "after [administrative] obstacles were in fact removed, all of the individual plaintiffs would have been subject to civil and criminal liability under federal law if they had failed to proceed with desegregation", and in the light of the foregoing cases, we think the judge was not in error in considering as an additional ground of federal jurisdiction:

> " * * * The duties of the Board of Directors were so interwoven and interlocked with the rights and privileges of the colored pupils of the district as to bring the case within the provisions of the Fourteenth Amendment as interpreted by the Supreme Court."

As we have found no error in the judgment appealed from, it is in all respects

Affirmed.