**UNITED STATES of America,**
**Appellant,**

v.

**Dale LOVETT, Norm Polk, Loyd McDougald and Jack Cornelius; Warren School District No. 1, James M. Hughes, Superintendent; John N. Scobey, Director; Charles A. Milton, Director; Gerald C. Sangster, Director; Weldon McWhirter, Director; and James Hurley, Director, Appellees.**

**No. 19601.**

United States Court of Appeals
Eighth Circuit.

Oct. 2, 1969.

Rehearing Denied Oct. 31, 1969.

Gary J. Greenberg, Atty., Dept. of Justice, Washington, D. C., for appellant; Jerris Leonard, Asst. Atty. Gen., and David L. Norman, Deputy Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Robert E. Johnson, U. S. Atty., Fort Smith, Ark., with him on the brief and reply brief.

G. Ross Smith, Little Rock, Ark., for appellees; Robert V. Light and Herschel H. Friday, Little Rock, Ark., with him on the brief.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES, BLACKMUN, GIBSON, LAY, HEANEY and BRIGHT, Circuit Judges, En Banc.*

PER CURIAM.

District 1 is a School District in Warren, Arkansas, with some 1,400 white students and 900 Negro students. Notwithstanding *Brown I*, *Brown II*, and their progeny, it continued to operate a totally segregated school system through the 1964-65 school year. In order to maintain eligibility for federal funds, after the passage of the Civil Rights Act of 1964, see, Green v. County School Board of New Kent County, 391 U.S. 430, 433, n. 2, 88 S.Ct. 1689, 20 L.Ed.2d 716 (1968), the District adopted a "freedom of choice" desegregation plan for the 1965-66 school year. The plan contemplated the continued operation of the District's two elementary and two high schools.

Progress towards desegregation under "freedom of choice" was minimal for the first three years. In the first year, eight Negro students chose to transfer to the previously all-white school in Grades 1 through 4. In the second year, 1966-1967, forty-four Negro students made a similar choice in Grades 1 through 8. In the third year, 1967-68, 110 Negro students elected to transfer to the previously all-white schools in Grades 1 through 12. During the three-year period, no white students chose the previously all-Negro schools and not more than eight of ninety teachers were assigned to schools in which their race was a minority.

In the Spring of 1967, HEW advised District 1 that unless further progress was made toward eliminating the dual structure, HEW would conduct a compliance review of the District. The review was subsequently conducted and the District informed that the "free choice had failed to adequately desegregate your dual system."

In February of 1968, HEW informed the District that it was to submit an adequate plan to eliminate the dual school system by the opening of the 1968-69 school year, unless there were administrative reasons why a unitary, nonracial school system could not be established until the 1969-70 school year. HEW further advised the District that noncompliance would result in administrative proceedings to terminate federal financial assistance.

On May 24, in response to continued prodding by HEW, District 1 adopted a revised plan. Its essential provisions were as follows:

(1) A new high school would be constructed during the 1969-70 school year, to be financed by a $600,000 bond issue to be submitted to the voters on March 11, 1969. All students in Grades 9 through 12 would attend this new high school beginning with the 1970-71 school year. All students in these grades would continue to have "freedom of choice" until the school was constructed.

(2) All students in Grades 6 through 8 would attend the formerly all-white high school beginning with the 1970-71 school year. "Freedom of choice" would continue in these grades until the specified date.

(3) All transportation furnished by the District would be operated on a desegregated basis effective September 1, 1968.

(4) Students in Grades 1 through 5 would continue to have "freedom of choice" for an indefinite period of time.

The plan was presented to HEW officials at a meeting in Warren on May 27. The HEW officials orally rejected the plan and informally advised the District that on the basis of Green v. County School Board of New Kent County, *supra*, decided that day, the proposed plan was

---

* Judge Mehaffy took no part in the consideration or decision of this appeal.

unacceptable because "freedom of choice" would be continued in part.

In early June, the District submitted a revised version of the March 24 plan.[1] Both the revised plan and the earlier plan were formally rejected by HEW in mid-June because they failed to provide for a unitary school system at the elementary level and because the District failed to justify the postponement of a unitary system in Grades 7 through 12 beyond the 1968–69 school year.

The District adopted another plan and submitted it to HEW on June 27, 1968. It was rejected on the grounds that it too delayed the establishment of a unitary system without sufficient reason.

The District was then notified that its file was being forwarded to Washington with recommendations to begin administrative proceedings for the termination of federal assistance. The Superintendent of Schools subsequently reopened negotiations with Washington officials of HEW. During a telephone conversation on July 31, 1969, a HEW official outlined a plan which he believed would be acceptable to HEW. Later the same day, the District submitted a plan embodying the features suggested by HEW.[2] This plan was accepted by HEW in a letter

1. The second plan, also adopted by the School Board on May 24th and submitted to HEW in early June, after the May 27, 1968, meeting, incorporated the following modifications into the original May 24th plan:

   (1) The seventh grade would be consolidated in the Warren High School beginning September 1, 1968.

   (2) The Board of Directors of the School District would make school assignments for those students who did not return their "freedom of choice" forms by July 1, 1968.

   (3) In addition to the eight teachers assigned across racial lines in the 1967–68 school year, six more teachers would be so assigned for the 1968–69 school year.

   (4) In the event that the bond issue proposed for March, 1969, did not pass, Grades 7 through 12 would be unitized in the Warren High School beginning September 1, 1970.

2. This plan was adopted by the Board of Directors of the District on July 29, 1968, and then submitted to HEW in the following letter:

   "Dear Dr. Henderson:

   " * * * [T]he Warren School Board of Directors submits the following revised proposals * * *:

   "1. In 1968–69 school year, grades one through six will be unitized by the grade pairing in the Westside and Eastside Elementary School. Grades one, two, three, and four will be housed at the Eastside School, and grades five and six will be housed at the Westside School.

   "2. In the 1969–70 school year, grades one through eight will be desegregated. Grades seven and eight will attend Warren High School.

"3. * * * [I]t was voted unanimously to propose a $600,000.00 bond issue at the next school election. This election will be held March 11, 1969. Proceeds of this bond issue will be used to build a new High School.

"4. 1969 build a new Senior High School for all pupils in the District without regard to race or color, in grades nine through twelve. September 1, 1970, is the target date to open the new High School and to phase out the predominately Negro Bradley County High School The pupils in grades nine, ten, eleven, and twelve will attend school at the new site.

"5. The following is an alternate plan * * *:

"a. In event the proposed bond issue fails to get approval of the voters in March 1969, the Board of Directors hereby declares its intention to close Bradley County High School and transfer all remaining pupils to Warren High School September 1, 1969.

"b. Temporary or portable class rooms will be erected on the campus of the Warren High School to house the additional number of classes.

"The Board will continue its policy of assignment of teachers without regard to race or color. If as a result of desegregation there is to be a reduction of the total staff of the school system, the qualifications of all staff members in the system will be evaluated in selection of the staff members to be released. Teachers and other professional staff will not be dismissed, demoted, or passed over for retention, promotion, or rehiring, on the ground of race, color, or national orgin [sic]."

dated August 13, 1968.[3] It provided for a unitary system in all grades no later than September of 1970 if the bond issue passed and for such a system in September, 1969, if it did not.

On August 7, 1968, a group of white parents brought an action in the Chancery Court of Bradley County, Arkansas, seeking to enjoin the District officials from implementing the July 31 plan. On August 14, 1968, the Chancery Court issued a temporary injunction enjoining enforcement of the HEW-approved plan pending a hearing on the motion for a permanent injunction set for September 4, 1968.

On August 21, 1968, the United States commenced this action by filing a complaint in the United States District Court for the Western District of Arkansas against the Warren School District, its officials and the plaintiffs in the state court proceeding. It sought to obtain an order declaring the state court decree null and void, enjoining the private defendants from interfering with enforcement by school officials of the HEW-approved desegregation plan, and requiring school officials to enforce the HEW-approved plan for the 1968–69 school year.

The government also filed an application for a temporary restraining order and a motion for a preliminary injunction. The District Court refused to enter the temporary restraining order and set the hearing on the motion for the preliminary injunction for August 28, 1968.

The District Court determined, after the hearing, that it had jurisdiction over both the parties and the subject matter and that the government had standing to bring the action. It entered an order:

(1) Relieving the District of its obligation to follow the temporary injunction entered by the State Chancery Court.

(2) Directing the District to file "a plan for a complete transition forthwith to a unitary school system" including the plans for the new high school no later than November 1, 1968, and providing for a hearing on the proposed plan.

(3) Granting permission to the District to commence classes under either the "freedom of choice" plan or such other plan which would "accommodate the opening of the school toward a unitary school system."

(4) Finding it unnecessary to enter a mandatory injunction requiring the School Board to implement either the HEW plan or the "freedom of choice" plan, to enjoin any of the parties to the action from interfering with the School Board in its operation of the school system or to require HEW by specific order to continue its financial assistance to the District.

(5) Retaining jurisdiction.

The United States filed a notice of appeal on October 28, 1968. The following day, the private defendants filed a notice of cross appeal. They contended that the government did not have standing to sue to set aside the state court order. They contended alternatively that the District Court erred in granting the requested relief. (This Court subsequently dismissed the cross appeal upon the motion of the individual appellants.)

---

3. The August 13th letter from HEW first restated the provisions of the plan submitted by the School Board. It then requested that HEW be notified after the March, 1969, bond issue as to which alternative plan would be employed. Finally, the letter set out HEW's acceptance of the July 31, 1968, plan in the following language:

"It appears that the implementation of this plan will eliminate all vestiges of the dual school structure in the Warren School District by the opening of the 1969–70 or, at the latest, 1970–71 school year. Based on the submission and implementation of this plan, your district will be in compliance with Title VI of the Civil Rights Act of 1964 for the coming year, and will remain eligible to receive Federal financial assistance."

Pursuant to the court's directive, the District filed a desegregation plan with the court on November 1, 1968, which proposed to continue a "freedom of choice" plan in the 1969–70 school year, or, alternatively, to implement the HEW-approved plan as of September, 1969. The government filed objections to the District's proposals and asked for early implementation of the HEW-approved plan. The court set a hearing for January 15, 1969, but on that day, the court deferred decision until April 1, 1969, when the results of the bond election would be known. It was defeated. At the April 1 hearing, the court ordered the District to file an alternative plan within twenty days. A revised plan was filed with the court by the District on April 22, 1969. It deviated from the HEW-approved plan in that it failed to provide for a unitary system in Grades 9 through 12 in the event that the bond issue was defeated in a second election scheduled for March, 1970.

No further order has been entered by the District Court.

This Court was advised at oral argument that a system, similar to that recommended by HEW, has been established for Grades 1 through 8 for the current school year. All students in Grades 1 through 4 attend the Eastside Elementary School, previously a predominately white school. All students in Grades 5 and 6 attend the Westside Elementary School, previously an all-Negro school. All students in Grades 7 and 8 attend the Warren Junior High School, previously a predominately white school. Assignment of students within the schools is made on a nonracial basis.

Students in Grades 9 through 12 are permitted to choose either Warren High School, the predominately white high school, or Bradley County High School, the all-Negro high school, under a "freedom of choice" plan.

Approximately twenty-seven Negro students are attending Warren High School. No white students are attending the Negro high school.

The School Board has voted to present to the voters, for a second time, a bond issue in March of 1970 to provide for the construction of a high school for all students in Grades 9 through 12. The District has made no provisions for any plan other than "freedom of choice" for these grades in the event that the bond issue fails to pass.

The parties concede that the government had standing to bring the action,[4] that the trial court had jurisdiction under 28 U.S.C. §§ 1345 and 2201 to hear it and that the trial court had the power to retain jurisdiction to secure the constitutional rights of the parties. The concessions end here.

The government argues that the trial court should have required that the HEW plan be implemented as written for the 1968–69 school year, or that it should

4. The concessions as to standing and jurisdiction are based on the allegations in the complaint of unlawful interference. Aaron v. Cooper, 257 F.2d 33 (8th Cir.), aff'd, 358 U.S. 1, 78 S.Ct. 1401, 3 L.Ed. 2d 5 (1958); Brewer v. Hoxie School District No. 46, 238 F.2d 91 (8th Cir. 1956).

 The government also argues that standing and jurisdiction can be based on the right of the government to enforce the assurances of compliances given by the District to the government. The trial court appears to have accepted the government's view on this issue. See, 42 U.S.C. § 2000d–1(2); United States v. Frazer, 297 F.Supp. 319 (M.D.Ala.1969); United

States v. County School Bd. of Prince George County, Va., 221 F.Supp. 93 (E.D.Va.1963). The School District disputes this theory of standing and jurisdiction, citing Gardner v. State of Alabama for and in Behalf Dept. of Pensions & Security, 385 F.2d 804 (5th Cir. 1967), cert. denied, 389 U.S. 1046, 88 S.Ct. 773, 19 L.Ed.2d 839 (1968), and United States v. Madison County Board of Education, 326 F.2d 237 (5th Cir. 1964). Since standing, jurisdiction and the right to grant relief on the first grounds is conceded, it is unnecessary for this Court to determine the validity of the alternative grounds.

have left the government free to enforce the plan administratively. See, 42 U.S.C. § 2000d–1(1). It further argues that this Court should now hold that "free choice" is an unacceptable plan of desegregation for the District and that we should remand to the trial court with instructions that it order an appropriate alternate plan, e. g., the HEW plan, be implemented without delay.

The District, on the other hand, urges that since the 1968–69 school year has been completed, the question as to the propriety of the trial court's order permitting "freedom of choice" to be used in that school year is moot. It further urges that the question of an appropriate plan for 1969–70 and succeeding school years is not properly before this Court as the trial court still has that issue under advisement.

■ There is no merit to either of the District's arguments. The basic question of whether the schools were being operated in a constitutionally permissible manner was properly presented to the District Court and this Court. We will decide it and require the District Court to take those steps necessary to protect the constitutional rights of those affected. 28 U.S.C. § 2106; Haynes v. United States, 390 U.S. 85, 88 S.Ct. 722, 19 L.Ed.2d 923 (1968); Calhoun v. Latimer, 377 U.S. 263, 84 S.Ct. 1235, 12 L.Ed. 2d 288 (1964); Minnesota v. National Tea Co., 309 U.S. 551, 60 S.Ct. 676, 84 L.Ed. 920 (1940); Bank of China v. Wells Fargo Bank & Union Trust Co., 190 F.2d 1010 (9th Cir. 1951).

■ The government's contention that the trial court was obligated to enforce the HEW plan in its entirety or to leave the government free to enforce the plan through its administrative remedies is also unsound.[5] The federal judiciary is obliged, where its jurisdiction is invoked in the manner that it was here, to assess the effectiveness of proposed plans to achieve a unitary school system. Green v. County School Board of New Kent County, supra. It must determine whether the plans are too narrow, too broad or just right, and determine whether the proposed time schedule is too fast, Alexander v. Holmes County Board of Education, 396 U.S. 1218, 90 S.Ct. 14, 24 L.Ed.2d 41 (Mr. Justice Black, Circuit Justice, Sept. 8, 1969), too slow, Monroe v. Board of Commissioners, 391 U.S. 450, 88 S.Ct. 1700, 20 L.Ed.2d 733 (1968); Green v. County School Board of New Kent County, supra, or adequate. Having made its determination, it must outline the appropriate remedy. Raney v. Board of Education, 391 U.S. 443, 88 S.Ct. 1697, 20 L.Ed.2d 727 (1968); Kelley v. Altheimer, Arkansas Public School Dist. No. 22, 378 F.2d 483 (8th Cir. 1967). The courts should give weight to proposals of HEW, but reserve final judgment to itself. Kemp v. Beasley, 352 F.2d 14, 18–19 (8th Cir. 1965).

Here, the dispute between HEW and the District centers not on whether a unitary school system should be established but when.

■ In the light of developments since the court's decree of August 30, 1968, it is clear that the trial court would have been well advised to have ordered the establishment of a unitary school system for the school year 1968–69. It apparently adopted a slower and more in-

5. In support of this position, the government cites Taylor v. Cohen, 405 F.2d 277 (4th Cir. 1968), and Gardner v. State of Alabama for and in Behalf Dept. of Pensions & Security, supra. These cases are not controlling. Both cases involved situations in which HEW had proceeded or was proceeding with its administrative remedy under 42 U.S.C. § 2000d–1(1) to terminate funding. In such circumstances, the Courts found 42 U.S.C. § 2000d–2 to have prescribed judicial review of the final administrative action as an exclusive remedy. However, in the instant case, HEW has sought direct intervention of the federal courts in an attempt to protect its interests rather than relying on the administrative power granted in 42 U.S.C. § 2000d–1(1). In so doing, HEW has invoked the broad remedial jurisdiction of the federal courts. Brewer v. Hoxie School District No. 46, supra.

definite time table because it accepted the view of the Superintendent of Schools (1) that the District was committed to the establishment of a unitary, nonracial school system, and (2) that such a system would be achieved at the earliest time and with the least interference with the educational process if the bond issue were voted on while "freedom of choice" was in effect. But, the situation changed when the bond issue was defeated. At that point, the trial court should have reviewed the matter and taken appropriate action.

■ There are, at this time, *no further* reasons for delaying the establishment of a unitary system. It is clear that "freedom of choice" will not work. While the District has taken steps to unitize Grades 1 through 8, it has failed to take similar steps with respect to Grades 9 through 12. Under these circumstances, and for the reasons stated more fully in this Court's opinion in Jackson v. Marvell School District No. 22, 416 F.2d 380 (8th Cir. 1969), issued today, previous orders of the trial court inconsistent with this opinion are vacated and the cause is remanded. The District Court is directed to require Warren School District 1 to file with the court, on or before a date designated by it, a plan which will convert the present organization of the public schools of Warren to a unitary, nonracial system. The plan shall eliminate all vestiges of the "freedom of choice" provisions, shall be fully implemented and shall become effective no later than January 19, 1970, the first school day of the second semester of the present 1969–70 school term. The District Court shall retain jurisdiction to insure that the plan approved by it is fully executed.

All costs in this Court will be taxed against appellees.

Because of the urgency in formulating and approving an appropriate plan, our mandate shall issue forthwith and will not be stayed pending petitions for rehearing or certiorari.